STATE EX REL. RANKIN, RELATOR, *v.* HARRINGTON, COUNTY ASSESSOR, RESPONDENT; THORNTON, INTERVENER AND RESPONDENT.

(No. 5,290.)

(Submitted May 2, 1923. Decided June 25, 1923.)

[217 Pac. 681.]

*Taxation—Corporations—Shares of Stock—Business Situs in Another State—Nonliability to Taxation Mobilia Sequuntur Personam—Public Policy.*

Taxation—Shares of Stock Having Business *Situs* in Another State not Taxable.
  1. *Held,* that shares of stock in foreign corporations owned by a legal resident of the state who, however, for all intents and purposes had left Montana and was doing business as a stock broker in the city of New York, which shares had never been within this state but where held and had their business *situs* in the state of New York, were not subject to taxation within this state.

(1)

Same—Limit of Power.
 2. The taxing power of the state does not extend beyond its territorial limits.

Same—Shares of Stock—Taxability.
 3. Shares of stock, if within the state, whether belonging to residents or nonresidents are proper subjects of taxation.

Same—*Mobilia Sequuntur Personam*—When Inapplicable.
 4. The maxim "*mobilia sequuntur personam*" as applied to determine the *situs* of personal property for purposes of taxation is not of universal application but must give way in the face of contrary facts.

Same—Shares of Stock Intangible Property—Where Taxable.
 5. Shares of stock in corporations are deemed intangible property taxable at the residence of their owner, except where there is such a combination of circumstances "as produce what is referred to in the books as a business *situs* as distinguished from the domicile of the owner."

Same—Shares in Foreign Corporations—Where Taxable.
 6. The state may tax a resident upon his stocks in foreign corporations which have no *situs* other than the domicile of their owner.

Same—Shares of Stock Kept Out of State for Purpose of Evading Taxation—Business *Situs* Rule not Controlling.
 7. Where shares of stock are kept out of the state for the purpose of evading taxation they are not within the rule as to business *situs* but are controlled by the maxim *mobilia sequuntur personam* and are taxable at the domicile of their owner.

State—Public Policy—Function of Supreme Court.
 8. While the supreme court may declare which of two conflicting principles of law is best suited to conditions in this state, taking into consideration the history of the state and its general policy as indicated by the Constitution and statutes, it is not its function to declare the public policy of the state respecting matters upon which the legislature has spoken.

Original application for writ of *mandamus* by the State, on the relation of Wellington D. Rankin, Attorney General, against Ed. J. Harrington, to compel respondent, as County Assessor of Silver Bow County, to assess for taxation certain shares of stock owned by W. D. Thornton, intervener. Proceeding dismissed.

*Mr. Wellington D. Rankin, pro se,* submitted a brief and argued the cause orally.

A state has the power to tax shares of stock in a foreign corporation when owned by a resident of the state, irrespective of the extent to which the corporate property or stock is subjected to taxation in the state where the corporation is domiciled. (*Wright* v. *Louisville,* 195 U. S. 219, 49 L. Ed. 167, 25

3. Taxation of shares of stock, see note in 62 Am. St. Rep. 458,

Sup. Ct. Rep. 16 [see, also, Rose's U. S. notes]; *Central of Georgia Ry. Co.* v. *Wright,* 207 U. S. 127, 12 Ann. Cas. 463, 52 L. Ed. 134, 28 Sup. Ct. Rep. 47 [see, also, Rose's U. S. Notes]; *Hawley* v. *Malden,* 232 U. S. 1, Ann. Cas. 1916C, 842, 58 L. Ed. 477, 34 Sup. Ct. Rep. 201; *Central of Georgia Ry. Co.* v. *Wright,* 166 Fed. 153; *State* v. *Kidd,* 125 Ala. 413, 28 South. 480; affirmed 188 U. S. 730, 47 L. Ed. 669, 23 Sup. Ct. Rep. 409 [see, also, Rose's U. S. Notes]; *San Francisco* v. *Fry,* 63 Cal. 470; *Darnell* v. *State,* 174 Ind. 143, 90 N. E. 769; *Cook* v. *Marion County,* 175 Ind. 218, 92 N. E. 876; *Judy* v. *Beckwith,* 137 Iowa, 24, 15 Ann. Cas. 890, 15 L. R. A. (n. s.) 142, 114 N. W. 565; *State* v. *Nelson,* 107 Minn. 319, 119 N. W. 1058; *Bradley* v. *Bauder,* 36 Ohio St. 28, 38 Am. Rep. 547; *Fidelity & Columbia Tr. Co.* v. *Louisville,* 245 U. S. 54, L. R. A. 1918C, 124, 62 L. Ed. 145, 38 Sup. Ct. Rep. 40; *Seward* v. *City of Rising Sun,* 79 Ind. 351; Judson on Taxation, sec. 484.)

The question involved in this proceeding has been settled by the decisions of the supreme court of the United States. In the case of *Citizens' Nat. Bank of Cincinnati* v. *Durr,* 257 U. S. 99, 66 L. Ed. 149, 42 Sup. Ct. Rep. 15, the court had under consideration the right of the state of Ohio to tax a resident of that state by reason of his owning a membership in the New York Stock exchange. It was contended that the tax infringed his constitutional rights. The court upheld the tax. That case disposes of the contention of defendant relative to double taxation. The state of Montana may tax the shares of stock at the domicile of the owner, regardless of whether the courts of some other state may have held that the same property had a business *situs* within the other state, so as to be subject to taxation therein. To the same general effect are *Cream of Wheat Co.* v. *County of Grand Forks,* 253 U. S. 325, 64 L. Ed. 931, 40 Sup. Ct. Rep. 558; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, L. R. A. 1918C, 124, 63 L. Ed. 145, 38 Sup. Ct. Rep. 40.

In the latter case an action was brought to recover taxes for the years 1907 and 1908 in respect to personal property omitted

from the original assessment to the owner, Ewald, in his life-
time. Ewald was domiciled in Kentucky, but continued to
carry on a business in St. Louis, Missouri, where he had for-
merly lived. The money earned from the business carried on
in the state of Missouri was deposited in St. Louis banks, sub-
ject to his check. The question was whether this money could
be taken into account in determining the amount of his Louis-
ville tax. It was contended that these deposits were tangible
property, and, therefore, came within the rule laid down in the
case of *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S.
194, 4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct. Rep. 361
[see, also, Rose's U. S. Notes]. The court held otherwise. In
that case there was a much stronger showing as to business
*situs* than in the instant case, for the money in question was
not only deposited in the St. Louis banks, but was earned from
a business permanently established there.

Shares of stock are intangible incorporeal personal property.
(2 Clark & Marshall on Private Corporations, sec. 376.) A
certificate of stock is not the stock itself, but is merely the evi-
dence of ownership. (2 Clark & Marshall on Private Corpora-
tions, sec. 378; 4 Thompson on Corporations, sec. 3455; 1 Cook
on Corporations, sec. 14; *O. L. Packard Co.* v. *Laeve,* 100 Wis.
644, 76 N. W. 596.) Stock is one thing and certificates an-
other. The former is the substance and the latter is the evi-
dence of it. (7 R. C. L., Corporations, sec. 182; Clark &
Marshall on Private Corporations, sec. 378 (a, b); *Williams* v.
*Ashurst O. L. & D. Co.,* 114 Cal. 619, 78 Pac. 28; *Henrick* v.
*Humphrey Hdw. Co.,* 73 Neb. 809, 119 Am. St. Rep. 917, 103
N. W. 685.) Stock is neither a credit, security nor money, but
is a separate and distinct property, and has been said to
be "intangible personal property"; consequently none of the
decisions cited by counsel in their brief where credits, security
or money is involved are in point. (See, also, *Graydon* v.
*Graydon,* 23 N. J. 229; *Bridgman* v. *City of Keokuk,* 72 Iowa,
42, 33 N. W. 355; *Mechanics' Bank* v. *New York & N. H. Ry.,*
13 N. Y. 549; *Atkins* v. *Gamble,* 42 Cal. 86, 10 Am. Rep. 282.)

The doctrine of *mobilia sequuntur personam* has been ap-

plied as a rule of action in this state.   In the case of *Monidah Trust* v. *Sheehan*, 45 Mont. 424, 123 Pac. 692, it would seem that the court would follow the same rule in this instance, and hold that,—where the owner was domiciled in the state,—even though the corporate stock was held abroad, it was taxable in this state.   (See *Western Assur. Co.* v. *Halliday*, 126 Fed. 257, 67 C. C. A. 271, affirming 110 Fed. 259.)   The doctrine, as applied and modified by the courts of this country, is a part of the common law of this state unless modified by statute. In *Holland* v. *Commissioners*, 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 579, this court recognized the rule that, in order to change the *situs* of personal property under the doctrine *"mobilia personam sequuntur,"* legislation was · necessary.   There is no legislation in this state separating the *situs* of shares of stock from the domicile of the owner, and it necessarily follows that the *situs* follows the domicile of the owner.

The intervener, however, claims that the stocks, upon which a tax is sought to be imposed in this case, has acquired a "business *situs*" in the state of New York by reason of the fact that they have been continually kept in the state of New York and used there to carry on dealings in buying and selling of stocks and other intangibles on the New York stock exchange. This court is asked to declare that such a use, as intervener alleges has been made of these certificates, in this regard, is sufficient to create a *situs* independent of his domicile for the purposes of taxation.   If this court so holds, we believe it will be the first court that has ever recognized a business *situs* for stocks independent of the domicile of its owner or agent so as to defeat the tax imposed by the state of the owner's domicile. The creation of a "business *situs*" will not be permitted to defeat taxation.   Although it has been held in innumerable decisions and stated by text-writers generally that shares of stock can be taxed both at the domicile of the corporation and at that of its owner without infringing in any way the rule as to double taxation, it is impossible to distinguish in principle a *situs* created by law for stocks at the corporate domicile and a business *situs* where one actually exists.

In the case of *Hawley* v. *Malden*, 232 U. S. 1, Ann. Cas. 1916C, 842, 58 L. Ed. 477, 34 Sup. Ct. Rep. 201 [see, also, Rose's U. S. Notes], affirming 204 Mass. 138, 90 N. E. 415, it was held that a tax of a resident upon shares of stock held by him in a foreign corporation, which did no business and had no property within the state, does not take his property without due process of law, and this notwithstanding the contention made therein, based on *Union Refrigerator Transit Co.* v. *Kentucky* and other cases, that the state has no right to tax the property of its citizens when permanently located within another jurisdiction. The case was brought to recover taxes which had been paid under protest. The case is important for the reason that the very question here raised was whether shares of stock are tangible property, and thus came within the rule as announced in the case of *Union Refrigerator Transit Co.* v. *Kentucky*, or whether they were intangible property and not violative of the clause of the federal Constitution. The court held that they were in the nature of contractual rights or choses in action, and, as such, in the absence of legislation prescribing a different rule or appropriately related to the person of the owner and being held by him at his domicile, constitute property with respect to which he was under obligation to contribute to the support of the government whose protection he enjoys.

26 R. C. L., section 248, page 282, states the following as bearing upon this subject: "While such property (intangible personal property such as bonds and stocks) may sometimes acquire a *situs* for taxation in a state other than that of the owner's domicile, and may, perhaps, lose its *situs* in the state of the owner's domicile, still it is the general rule in the absence of controlling circumstances to the contrary that the *situs* of intangible property for the purpose of taxation is the state of the owner's domicile. * * * Conceding, however, that in some cases intangible personal property may acquire a *situs* other than at the domicile of the owner, it does not follow and it has never been authoritatively determined that the acquisi-

tion of such *situs* and subjection to taxation by virtue of it
precludes the state of the owner's domicile from taxing the
same property also.   *   *   *   "

*Mr. W. B. Rodgers, Mr. J. A. Poore, Mr. D. M. Kelly* and
*Mr. John V. Dwyer,* for Respondent Harrington and Intervener
Thornton, submitted a brief; *Mr. Rodgers* argued the cause
orally.

We believe the authorities establish, and with great clear-
ness, in more recent times the principle that corporate bonds,
coporate stocks and likewise promissory notes, are, for the
purposes of taxation, to be classified with and as tangible
personal property.   This tendency has been especially marked
in many of the leading commercial states of the Union, and
likewise in the decisions of the supreme court of the United
States.   (Beale on Foreign Corporations, Chap. 20, secs. 486,
487; *People ex rel. Jefferson* v. *Smith,* 88 N. Y. 585; *People*
v. *Trustees of Village of Ogdensburgh,* 48 N. Y. 390; *Simp-
son* v. *Jersey City Constructing Co.,* 165 N. Y. 193, 55
L. R. A. 796, 58 N. E. 896; *People* v. *Home Ins. Co.,* 29 Cal.
540; *State ex rel. Dunnica* v. *County Court of Howard
County,* 69 Mo. 454.)   Stocks of a corporation are of such a
tangible character that they may be converted like corporeal
personal property.   (*Hagar* v. *Norton,* 188 Mass. 47, 73 N. E.
1073.)   They are the subject of larceny. and embezzlement.
They may be hypothecated, pledged and replevied.   They
may be made by statute subject to attachment and garnish-
ment.   (*Puget Sound Bank of Everett* v. *Mather,* 60 Minn.
362, 51 Am. St. Rep. 529, 62 N. W. 396.)   Title passes by
their delivery and assignment or indorsement.   (*Boston Music
Hall Assn.* v. *Cory,* 129 Mass. 435.)   We believe it has now
been definitely determined that they are of such a tangible
nature that they may be taxed wherever found permanently
located, without regard to the domicile of the owner.   (*Walker*
v. *Jack,* 88 Fed. 776, 31 C. C. A. 462; *Western Assur. Co.*
v. *Halliday,* 127 Fed. 830; *New Orleans* v. *Stempel,* 175
U. S. 309, 44 L. Ed. 174, 20 Sup. Ct. Rep. 110 [see, also,

Rose's U. S. Notes]; *Blackstone* v. *Miller,* 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277 [see, also, Rose's U. S. Notes].)

The following cases, to our minds, seem to establish conclusively that under our statute the corporate stocks of Thornton have no *situs* in Montana; are not within the territorial limits of the state, but having a pronounced business *situs* in the state of New York are subject to the jurisdiction of that state; are not property in the state of Montana, and are not taxable under the provisions of section 1997, Revised Codes of 1921.

The cases treating of this question, both as to tangible, *quasi* tangible and intangible personal property for the purpose of taxation, are divided into two classes: First, where the state of the domicile of the owner has attempted to assess and tax property similarly situated to that of the Thornton stocks, and the courts have held that they have no jurisdiction to do so. (*People ex rel. Jefferson* v. *Edwin Gardner,* 51 Barb. (N. Y.) 352; *People ex rel. Jefferson* v. *Smith et al.,* 88 N. Y. 579; *People* v. *Commissioner of Taxes,* 35 N. Y. 439; *People* v. *Trustees of Village of Ogdensburgh,* 48 N. Y. 397; *Graham* v. *First Nat. Bank of Norfolk,* 84 N. Y. 400, 38 Am. Rep. 528; *Wilcox* v. *Ellis,* 14 Kan. 446, 19 Am. Rep. 107; *Fisher* v. *Commissioners of Rush County,* 19 Kan. 414; *Brooks* v. *Kagor,* 23 Kan. 114; *Blain* v. *Irby,* 25 Kan. 501; *Poppleton* v. *Yamhill County,* 18 Or. 377, 7 L. R. A. 449, 23 Pac. 253; *State* v. *County Court,* 69 Mo. 454; *State* v. *St. Louis County,* 47 Mo. 594; *Stanford* v. *San Francisco,* 131 Cal. 34, 63 Pac. 145; *Estate of Fair,* 128 Cal. 607, 61 Pac. 184; *State* v. *Falkinburge,* 15 N. J. L. 320; *Union Transit Co.* v. *Kentucky,* 199 U. S. 201, 4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct. Rep. 36 [see, also, Rose's U. S. Notes]; *Commonwealth* v. *West India Oil Refining Co.,* 138 Ky. 828, 129 S. W. 301.)

Second, where the state other than the domicile of the owner has attempted to assess and tax personal property, both tangible, *quasi* tangible and intangible, having either

an actual or business *situs* in that state. Of these there a multitude, and where an actual business *situs* has been acquired and the property has been localized in a state different from the domicile of the owner, we know of no state that has either denied or seriously questioned the power.

We cite *Union Refrigerator Transit Co.* v. *Lynch*, 18 Utah, 378, 48 L. R. A. 790, 55 Pac. 639; *Finch* v. *York County*, 19 Neb. 50, 56 Am. Rep. 741, 26 N. W. 589; *Buck* v. *Miller*, 147 Ind. 586, 62 Am. St. Rep. 436, 37 L. R. A. 384, 47 N. E. 8; *Armour Packing Co.* v. *Clark*, 124 Ga. 369, 52 S. E. 145; *Armour Packing Co.* v. *Mayor*, 115 Ga. 120, 41 S. E. 237; *Armour Packing Co.* v. *City Council of Augusta*, 118 Ga. 552, 98 Am. St. Rep. 128, 45 S. E. 424; *Reat* v. *People*, 201 Ill. 469, 66 N. E. 242; *Marshall-Wells Hardware Co.* v. *Multnomah County*, 58 Or. 469, 115 Pac. 150; *Hutchinson* v. *Board of Equalization*, 66 Iowa, 35, 23 N. W. 249; *Redmond* v. *Commissioners of Rutherford*, 87 N. C. 124; *Commonwealth* v. *Prudential Life Ins. Co.*, 149 Ky. 380, 149 S. W. 836; *Hillman Land & Iron Co.* v. *Commonwealth*, 148 Ky. 331, 146 S. W. 776; *Commonwealth* v. *Kentucky Distilleries & Warehouse Co.*, 143 Ky. 314, 136 S. W. 1040; *New Orleans* v. *Stemple*, 175 U. S. 311, 44 L. Ed. 174, 20 Sup. Ct. Rep. 110 [see, also, Rose's U. S. Notes]; *Bristol* v. *Washington County*, 177 U. S. 139, 44 L. Ed. 701, 20 Sup. Ct. Rep. 585; *Board of Assessors* v. *Comptoir National*, 191 U. S. 401, 48 L. Ed. 232, 24 Sup. Ct. Rep. 109; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 397, 51 L. Ed. 853, 27 Sup. Ct. Rep. 499; *Liverpool etc. Ins. Co.* v. *Orleans Assessors*, 221 U. S. 347, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550 [see, also, Rose's U. S. Notes]; *Catlin* v. *Hull*, 21 Vt. 152; *In re Romain's Estate*, 127 N. Y. 80, 12 L. R. A. 401, 27 N. E. 759; *People* v. *Wells*, 184 N. Y. 275, 12 L. R. A. (n. s.) 905, 77 N. E. 19. It may be confidently asserted, that notwithstanding the frame of their taxation statutes, every state of the Union that has passed upon the question has given full recognition

10     State ex rel. Rankin *v.* Harrington.     [June T. '23

[68 Mont. 1.]

of and full effect to the doctrine of a business *situs* for the purpose of localizing property and subjecting it to taxation.

If the statutes of the state of Montana relating to taxation be construed to command the assessment and taxation of corporate stocks, located and situated as are the Thornton stocks, used in connection with a business and being part of a permanent business in the state of New York, the questions are here presented as to whether such statutes are not obnoxious to the fundamental principle that no state can tax property beyond its territorial limits and not subject to the jurisdiction of said state, and likewise as to whether such statutes and such taxation would not be repugnant to and violative of the fourteenth amendment of the Constitution of the United States. That property must be within the territorial limits of a state before it may be taxed is settled beyond all controversy, and is so axiomatic that the statement of the rule is sufficient. (*United States* v. *Bennett,* 232 U. S. 299, 58 L. Ed. 612, 34 Sup. Ct. Rep. 433, [see, also, Rose's U. S. Notes]; *McCulloch* v. *Maryland,* 4 Wheat. 315, 4 L. Ed. 579; *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385, 47 L. Ed. 513, 26 Sup. Ct. Rep. 463; *Union Transit Co.* v. *Kentucky,* 199 U. S. 195, 4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct. Rep. 36; *Liverpool & London Ins. Co.* v. *Board of Assessors,* 221 U. S. 346, L. R. A. 1915C, 903, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550.)

*Mr. Sydney Sanner, Amicus Curiae,* submitted a brief.

The argument of relator is that into the statute must be read a fiction of the law, to-wit, *mobilia sequuntur personam,* in virtue of which this property because owned by a resident of this state becomes taxable by it. To this there are several answers.

(a) The public policy of this state forbids the reading of anything into a statute which is plain and enforceable without such aids. This, we take it, is so elementary as to require no citation to support it. (b) The public policy of Mon-

tana forbids all claims to extraterritorial jurisdiction in the matter of taxation. In support of this proposition we need only refer again to *Hayes* v. *Smith,* 58 Mont. 306, 192 Pac. 615, *J. I. Case T. M. Co.* v. *Stewart,* 60 Mont. 380, 199 Pac. 909, and *General Electric Co.* v. *Stewart,* 60 Mont. 387, 199 Pac. 911. (c) "It is the policy of the law," said this court in *Anaconda C. M. Co.* v. *Ravalli County,* 52 Mont. 422, 158 Pac. 682, "that there shall not be double taxation of any property"; and no proposition is better settled generally than that double taxation is not favored. The presumption of the law is against it; courts will not read into statutes conditions which will give rise to it; on the contrary, unless it is clearly evident that the double tax is intended, courts will so construe laws that such result will be avoided. (*Tennessee* v. *Whitworth,* 117 U. S. 129, 29 L. Ed. 830, 6 Sup. Ct. Rep. 645 [see, also, Rose's U. S. Notes]; *Georgia R. & B. Co.* v. *Wright,* 125 Ga. 589, 54 S. E. 52; *State* v. *Austin & N. W. R. Co.,* 94 Tex. 530, 62 S. W. 1050; *First Nat. Bank* v. *Douglas County,* 124 Wis. 15, 4 Ann. Cas. 34, 102 N. W. 315; *Rice County* v. *Bank,* 23 Minn. 280; *Chicago* v. *Collins,* 175 Ill. 445, 67 Am. St. Rep. 224, 49 L. R. A. 408, 51 N. E. 907.) And the double taxation which courts will strive to avoid is not only that imposed by the same jurisdiction on the same person for the same property, but it includes any double taxation upon the same property arising out of divergent theories of *situs.* (*State* v. *Bodcaw Lumber Co.,* 128 Ark. 505, 194 S. W. 693; 26 R. C. L., p. 263, sec. 231; *Hoyt* v. *Commonwealth of Texas, supra,* 23 N. Y. 225; *Barry* v. *Windham,* 59 N. H. 288.)

The maxim "*mobilia sequuntur personam*" is not a rule of decision. The idea or principle embodied in the phrase is primarily in aid of contracts and descents; as applied to taxation it has no inherent force, nor does it admit of consistent, uniform or necessary application. (*Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 22, 34 L. Ed. 613, 11 Sup. Ct. Rep. 876 [see, also, Rose's U. S. Notes]; *Adams Express*

*Co.* v. *Ohio,* 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604; *Board of Assessors* v. *Comptoir National, etc.,* 191 U. S. 388, 48 L. Ed. 232, 24 Sup. Ct. Rep. 109; *Liverpool etc. Ins. Co.* v. *Assessors,* 221 U. S. 246, L. R. A. 1915C, 903, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550; *Poppleton* v. *Yamhill County,* 18 Or. 377, 7 L. R. A. 449, 23 Pac. 253; *Endicott-Johnson Co.* v. *Multnomah County,* 96 Or. 679, 190 Pac. 1109; 26 R. C. L. 276.) The condition of taxability, *viz.,* the rendering of an equivalent by the state claiming the right to tax, is absent in this case and such absence precludes the invocation of *mobilia sequuntur personam.* (*Catlin* v. *Hull,* 21 Vt. 152; *Wilkey* v. *Pekin,* 19 Ill. 160; *State* v. *Falkinburge,* 15 N. J. L. 320; *Redmon* v. *Commissioners,* 87 N. C. 122; *Board of Commrs.* v. *Comptoir National, etc.,* 191 U. S. 388, 48 L. Ed. 232, 24 Sup. Ct. Rep. 109 [see, also, Rose's U. S. Notes]; *Armour Packing Co.* v. *Augusta,* 118 Ga. 552, 98 Am. St. Rep. 128, 45 S. E. 424; *People* v. *Gardner,* 51 Barb. (N. Y.) 352.)

Intangibles generally, as well as tangibles, may have a taxable *situs* apart from the owner, and under our laws do have such *situs* here when they are here; conversely, they have no taxable *situs* here if they are permanently elsewhere. (*Blackstone* v. *Miller,* 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277 [see, also, Rose's U. S. Notes]; *Louisville etc. Co.* v. *Kentucky,* 188 U. S. 385, 47 L. Ed. 513, 26 Sup. Ct. Rep. 463; *Adams Express Co.* v. *Ohio,* 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604; *People* v. *Smith,* 88 N. Y. 576; *Buck* v. *Board of Commrs.,* 103 Kan. 270, 173 Pac. 344; *Marshall Wells Co.* v. *Multnomah County,* 58 Or. 469, 115 Pac. 150; *Catlin* v. *Hull,* 21 Vt. 152; *Leavitt* v. *Blades,* 237 Mo. 695, 141 S. W. 893; *People* v. *Home Ins. Co.,* 29 Cal. 533; *Goldgart* v. *People,* 106 Ill. 25; *State* v. *Northern Pac. Ry. Co.,* 139 Minn. 473, 167 N. W. 294, 296; *Billinghurst* v. *Spink Co.,* 5 S. D. 84, 58 N. W. 272; *Adams* v. *Mfg. Co.,* 82 Miss. 263, 100 Am. St. Rep. 633, 34 South. 482; *Herron* v.

68 Mont.] State ex rel. Rankin *v.* Harrington. 13

[68 Mont. 1.]

*Keeran,* 59 Ind. 472; *Redmond* v. *Commissioners,* 87 N. C. 122; *Finch* v. *York County,* 19 Neb. 50, 56 Am. Rep. 741, 26 N. W. 589; *Armour Packing Co.* v. *Clark,* 124 Ga. 369, 53 S. E. 145; *Mayor of Mobile* v. *Baldwin,* 57 Ga. 61; *Commonwealth* v. *Oil Refining Co.,* 138 Ky. 828, 36 L. R. A. (n. s.) 295, 129 S. W. 301; *State* v. *Fidelity & Deposit Co.,* 35 Tex. Civ. 214, 80 S. W. 544; *Heinz* v.· *Board,* 121 Iowa, 445, 96 N. W. 239; *Monongahela Coal Co.* v. *Assessors,* 115 La. 564, 112 Am. St. Rep. 275, 2 L. R. A. (n. s.) 267, 39 South. 601; *Bowman* v. *Boyd,* 21 Nev. 281, 30 Pac. 823; *Walker* v. *Jack,* 88 Fed. 576, 31 C. C. A. 462.)

A business *situs* may be created for all kinds of property visible or invisible, tangible or intangible, corporeal or incorporeal; and such *situs* is their *situs* for taxation; the facts at bar show for the stocks in question a business *situs* in the state of New York. (*Orient Ins. Co.* v. *Assessors,* 221 U. S. 358, 55 L. Ed. 769, 31 Sup. Ct. Rep. 554 [see, also, Rose's U. S. Notes]; *Marshall Wells Co.* v. *Multnomah County,* 58 Or. 469, 115 Pac. 150; *McKennon* v. *McFall,* 127 Tenn. 393, 155 S. W. 158; *Armour Packing Co.* v. *Augusta,* 118 Ga. 552, 98 Am. St. Rep. 128, 45 S. E. 424; *Monongahela, etc.,* v. *Board,* 115 La. 564, 112 Am. St. Rep. 275, 2 L. R. A. (n. s.) 267, 39 South. 601; *Commonwealth* v. *Dun,* 126 Ky. 108, 102 S. W. 859; *Walker* v. *Jack,* 88 Fed. 576, 31 C. C. A. 462; *Matzenaugh* v. *People,* 194 Ill. 108, 88 Am. St. Rep. 134, 62 N. E. 546; *Hathaway* v. *Edwards,* 42 Ind. App. 22, 85 N. E. 28; *Stanford* v. *San Francisco,* 131 Cal. 34, 63 Pac. 145; *People* v. *Barker,* 155 N. Y. 665, 49 N. E. 1103; *Estate of Fair,* 128 Cal. 609, 61 Pac. 184; *Hutchinson* v. *Board,* 66 Iowa, 35, 23 N. W. 249; *Heinz* v. *Board,* 121 Iowa, 445, 96 N. W. 967; *Higgins* v. *Commonwealth,* 126 Ky. 211, 103 S. W. 306; *Standard Marine Ins. Co.* v. *Assessors,* 123 La. 717, 29 L. R. A. (n. s.) 59, 49 South. 483; *Finch* v. *York County,* 19 Neb. 50, 57 Am. Rep. 741, 26 N. W. 589; *Redmond* v. *Rutherford,* 87 N. C. 122; *Hubbard* v. *Brush,* 61 Ohio St. 252, 59 N. E.

829; *Billinghurst* v. *Spink County,* 5 S. D. 84, 58 N. W. 272;
*Hall* v. *Miller,* 102 Tex. 289, 115 S. W. 1168.)

*Messrs. Kremer, Sanders & Kremer, Amici Curiae.*

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

In this action the attorney general as relator seeks a
writ of mandate to compel Ed. J. Harrington, as assessor
of Silver Bow county, to assess for the purpose of taxation
certain shares of stock of the Inspiration Consolidated Cop-
per Company and of the United Verde Extension Mining
Company, which the intervener, W. D. Thornton, owned on
the first Monday of March, 1923. Upon the admitted facts
gathered from the petition, answer of Harrington, and com-
plaint in intervention filed by Thornton, the latter was on
the first Monday of March, 1923, and for many years prior
thereto had been, a legal resident of the city of Butte. On
that date he was the owner of the shares of stock named
and these have never been listed for assessment in the state
of Montana. The Inspiration Consolidated Copper Company
is incorporated under the laws of the state of Maine, and the
United Verde Extension Mining Company under the laws
of Delaware. The entire property of these corporations is
within the state of Arizona. Neither corporation has ever
owned or had any interest in any property within the state
of Montana, nor has either ever transacted any business of
any nature within this state. The stocks of these companies
have been for many years, and are now, listed for sale upon
the New York, Boston and other stock exchanges, and large
numbers of the shares of these companies have been daily
bought and sold for many years upon and through the me-
dium of these stock exchanges.

In 1906 Thornton closed out his business affairs in this
state which required his personal attention and went to the
city of New York. There he engaged in the business of buy-

ing and selling upon his own account shares of stock of cor-
porations, both domestic and foreign to the state of New
York, together with such other bonds, notes and securities
as are usually dealt in in a business of that character. In
order to carry on his business he has borrowed large sums of
money from banks and trust companies located in that
city and from citizens and residents of the state of New
York, part of which has been secured by collateral owned by
him and belonging to his business, none of which has ever
been within the state of Montana, and all of which was
owned and used by him as a part and in connection with his
New York business. None of the capital or moneys invested
by him in that business, or stocks, bonds, notes or securities con-
nected therewith, has ever been within the state of Montana
or secured or derived from his investments in Montana. The
stocks in question were purchased by him with money and
capital invested in his New York business, are a part of that
business, and have never been actually within this state.

Ever since 1906 and up to and including the present time
Thornton has been absent almost continuously from the city
of Butte and from the state of Montana, and has been
within the city of New York, returning to this state only at
infrequent intervals, usually for a period of four or five
weeks during each year. While he has been a legal resident
of this state, his business as distinguished from his legal resi-
dence has been in the city of New York.

Upon the foregoing statements, admitted to be true for
the purposes of this case, the intervener alleges that the stocks
in question are not property in the state of Montana, are not
subject to assessment by the officers of this state, are not
taxable here, but the same are localized and have their *situs*
in the city of New York, being property exclusively within
the territorial limits of the state of New York and subject
to the jurisdiction of that state for the purposes of taxation.
The concrete question presented is whether the laws of
[1]  Montana command the assessment of the shares of stock

of a resident of this state even though they have a business *situs* in another state. The question is one of first impression in this state.

Section 1, Article XII, of the Constitution, declares: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. * * * " And section 1997, Revised Codes of 1921, provides: "All property in this state is subject to taxation, except as provided in the next section." No question as to exemption from taxation is involved in this controversy.

The taxing power of the state does not extend beyond its [2] territorial limits. (*Hayes* v. *Smith,* 58 Mont. 306, 192 Pac. 615.) It is essential to the validity of a tax that the property subject to it shall be within the territorial jurisdiction of the taxing power. (*Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct. Rep. 36 [see, also, Rose's U. S. Notes].) "Whatever may be said of its vast character and sweeping extent, the power of taxation, of necessity, must be limited to subjects within the jurisdiction of the state, or, as otherwise characterized, to subjects which have acquired a *situs* within the state for the purpose of taxation." (*Hayes* v. *Smith, supra.*)

Section 17 of Article XII of the Constitution declares: "The word property as used in this article is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership, but this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed." Respecting section 17 this court has said: "This latter section, in its definition of that which may be made sub-

ject to taxation, is sufficiently comprehensive to include all matters and things, visible and invisible, tangible and intangible, corporeal and incorporeal, capable of private ownership." (*Northwestern Mut. Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.) Subdivision 1 of section 1996, Revised Codes of 1921, is practically a reiteration of the language of section 17 [3] foregoing. That the section gives affirmative recognition to the policy that shares of stock may have an independent status for the purpose of taxation is too clear to admit of discussion; and that such shares, if within this state, whether belonging to residents or nonresidents, are proper subjects of taxation is beyond question.

By the provisions of section 2002, Revised Codes of 1921, the assessor is required to ascertain the names of all taxable inhabitants, and all property in his county subject to taxation, except such as is required to be assessed by the state board of equalization, and to assess such property to the persons by whom it was owned or claimed or in whose possession or control it was at 12 o'clock noon of the first Monday of March next preceding.

Section 2003 directs the assessor to require from each person a statement under oath setting forth specifically all the real and personal property owned by such person, or in his possession or under his control at 12 o'clock noon on the first Monday of March. Then follow sections relating to the property of absent or unknown owners (2008, 2009), to property situate in another county (2010), and section 2012 provides: "When a person is assessed as agent, trustee, bailee, guardian, executor, or administrator, his representative designation must be added to his name, and the assessment entered on a separate line from his individual assessment." By section 2013 it is provided that "The property of every firm and corporation must be assessed in the county where the property is situate, and must be assessed in the name of the firm or corporation." Section 2015 provides that "The capi-

tal stock and franchises of corporations and persons, except as otherwise provided, must be listed and taxed in the county, town, or district where the principal office or place of business of such corporation or person is located; if there be no principal office or place of business in the state, then at the place in the state where any such corporation or person transacts business.'' By the provisions of section 2016, ''the personal property belonging to the business of a merchant or of a manufacturer must be listed in the town or district where his business is carried on,'' and by section 2017 the personal property of express, transportation and stage companies, steamboats, vessels and other water craft must be listed and assessed in the county, town or district where such property is usually kept. And after providing for the assessment of railroads, telegraph, telephone and electric light lines (2021, 2022), the first sentence of section 2023 declares: ''All other taxable property must be assessed in the county, city, or district in which it is situated.''

The foregoing statutes demonstrate the emphasis laid upon the actual *situs* of property for purposes of taxation by the law-making power, and also indicate a clear intention to include the property of nonresidents which has a *situs* here.

While the Attorney General admits that the stocks are and always have been in New York, he urges that, as Thornton is a resident of this state, the *situs* of the stocks in question is here under the doctrine of *mobilia sequuntur personam*— movables follow the person. In order to arrive at a proper understanding of the problem presented it will be of advantage to consider briefly two theories of taxation bearing upon the subject, one of which may be called the Massachusetts, the other the New York, doctrine, tracing then the course of legislative action in the territory and state of Montana with respect thereto.

The statutes of Massachusetts provided that all property, real and personal, situated within the commonwealth, and all personal property of the inhabitants of the commonwealth

wherever situated, unless expressly exempted by law, should be subject to taxation. Under these statutes Massachusetts for over three-quarters of a century has taxed her inhabitants upon shares of stock in foreign corporations owned by them, upon the theory that movables follow the person. (*Inhabitants* v. *County Commrs.*, 16 Pick. (Mass.) 572; *Dwight* v. *Boston*, 12 Allen (Mass.), 316, 90 Am. Dec. 149; *Hawley* v. *Malden*, 204 Mass. 138, 90 N. E. 415.) Many states follow the Massachusetts rule, even under different statutes.

New York's statute provided, in effect, that all lands and all personal estate within the state should be liable to taxation, subject to certain exemptions. Under this statute the supreme court, in the leading case of *People* v. *Commissioners of Taxes*, 23 N. Y. 224, denied the fiction of law that personal estate has no *situs* away from the person or residence of the owner, and held the actual *situs* of the property to be controlling. These conflicting doctrines were well understood when the territory came into existence.

Our first legislative assembly adopted "an Act providing for the collection of the revenue." (Bannack Laws, p. 411.) Section 3 thereof provided that all property of every kind and nature whatsoever, within this territory, with certain exceptions, should be subject to taxation. Section 4, a lengthy one, provided in part: "All other property, real and personal, within the territory, is subject to taxation, in the manner herein directed, and this is intended to embrace [after enumerating certain kinds of real and personal property] stock or shares in any bank or company incorporated or otherwise, and whether incorporated by this or any other territory or state, and whether situated in this territory or not. * * * " This was supplemented by section 6, which declared that "Every inhabitant of this territory, of full age and sound mind, shall list all property, subject to taxation in this territory, of which he is the owner, or has the control or management, in the manner hereinafter directed. * * * " Thus the legislature practically adopted the Massachusetts doctrine.

The legislature of 1871 re-enacted the Bannack statute with slight amendments (Codified Statutes, p. 600), as did that of 1879 (Rev. Stats., p. 615). A radically different Revenue Act was passed by the first session of the legislature of 1887. (Comp. Stats., p. 1104.) Section 3 (1667) provided: "All property, both real and personal, within the territory, not expressly exempt by law, shall be subject to taxation." The new Act did not contain section 4 of the previous Acts; while parts of it were included in section 2 (1666) of the new Act, the language of that section above quoted and analogous phraseology was wholly omitted.

The 1887 Act had a brief existence. It was enacted in March, and in August an extraordinary session was called—reputed generally for the purpose of repealing the Prairie Dog and Ground Squirrel Bounty Act, also passed·in March, 1887. The extraordinary session repealed the Revenue Act enacted at its first session, and enacted another which embraces portions of all former Acts. (Laws Ex. Sess. 1887, p. 82.) As section 4 of the new Act it re-enacted substantially section 4 of the Bannack Laws, but with some alterations and additions, notably the following: In place of the above-quoted excerpt from section 4 this appears: "Stocks or shares in any bank or company, incorporated or otherwise, and whether incorporated by this or any other territory or state, or whether situated in this territory or not, except that where the entire capital stock of any incorporated company shall be invested in assessable property in the territory of Montana, such capital stock shall not be taxed.    *    *    *    "

When the legislature met in 1889 it again amended the Revenue Act and did so in contemplation of impending statehood. (Laws 1889, p. 219.) While the 1889 Act did not in terms repeal section 4, the first section of the new Act, amending section 3 of the Act of the extraordinary session, declared that "All real and personal property in the territory (or state) of Montana    *    *    *    shall be listed and assessed

with reference to its value and location, on the first day of April preceding the assessment: Provided, that the provisions of this section shall be construed to apply to all taxable personal property within the exterior limits of the territory (or state), including all property situated upon Indian and military reservations. * * * " Section 3 of the 1889 Act was the forerunner of many important sections of the 1891 Act and of sections 2013, 2015, 2016, 2017, 2018, 2019 and 2020 and others of the Revised Codes of 1921.

Whether section 4 of the Act passed by the extraordinary session was repealed by the 1889 Act is not necessary to be decided now; but it is perfectly clear that the last expression of the territorial legislature was a departure from the Massachusetts and a recognition of the New York doctrine.

At the next session of the legislature—the first following the adoption of the Constitution and the attainment of statehood— a revenue measure was passed and approved (Laws 1891, p. 73), and this, with minor amendments and modifications, is still in force. (*Hayes* v. *Smith, supra.*) The 1891 Act followed the policy of the 1889 Act closely. As above adverted to, it adopted many of its important provisions, some literally, many substantially.

Now, in order to arrive at a proper construction of our constitutional provisions quoted above, let us consider the subject "in the light of our history, the surrounding circumstances, the subject matter under consideration, and the object to be attained." (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386; *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392.) Not only do we find the territorial policy at the time the Constitution was framed and adopted to have been inclined strongly against the Massachusetts and in favor of the New York rule, but also that the first state legislature followed the policy then indicated—a contemporaneous construction, undisturbed now for a generation.

The inquiry naturally follows: What has been the attitude of this court respecting the maxim *mobilia sequuntur personam*

in respect to taxation? In *Gallatin County* v. *Beattie*, 3 Mont. 173, it had under consideration a question relating to the assessment of mortgages. The taxpayer, a resident of Lewis and Clark county, held mortgages upon real estate in Gallatin county. The assessor of Gallatin county sought to tax these mortgages. The court said there was nothing in the proof tending to show that at the time of the assessment of taxes on the property the mortgages were in Gallatin county. "A mortgage being a mere chattel like any other personal property, is subject to taxation in the county where it is found. The record of a mortgage is not the mortgage itself, any more than any other copy would be. The mortgages in this case not having been found in the county of Gallatin during the fiscal year that they were listed and assessed there, the assessor had no right to list and assess them, for they were not subject to taxation in that county." The Attorney General argues that the court thus recognized the maxim, but we think it deemed the actual *situs* of the mortgages to be the determining factor in the case.

In *Holland* v. *Commissioners*, 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 579, the court recognized the principle of the maxim. The case had to do with the assessment of mortgages belonging to nonresidents. It said: "Regarding a mortgage, therefore, for the purposes of taxation, as nothing more than a collateral security, depending upon some outside obligation to secure which it is given, it is established by the great weight of authority that the mortgage belongs to the owner of the debt, and passes with the debt to any lawful holder thereof. * * * The debt, therefore, if owned and controlled by one not a resident of the state, is not 'property in the state subject to taxation,' as provided by the Revenue Act of 1891, but can be assessed only at the domicile or place of residence of the creditor, without regard to the domicile of the debtor." But further on it is said: "It may be that if, as a fact, notes and mortgages owned by nonresidents are actually within the state, and are controlled by the agents therein, who retain them and make the

investments for the owners, such securities, under the present revenue laws, are subject to taxation in the hands of such agents as property in the state.''

In *Flowerree Cattle Co*. v. *Lewis & Clark County*, 33 Mont. 32, 8 Ann. Cas. 674, 81 Pac. 398, this court affirmed the annulment of an assessment upon cattle only temporarily within Lewis and Clark county, which was the residence of their owner, the *situs* of the cattle being not in the residence of their owner but in the county of their accustomed and permanent range. This was a distinct denial of the maxim respecting personal property within the state, actual *situs* being held controlling in that instance.

In *Monidah Trust* v. *Sheehan*, 45 Mont. 424, 123 Pac. 692, the facts were that Monidah Trust, a corporation under the laws of Delaware, and transacting business in Montana and elsewhere, had loaned money upon property situated in this state and had taken notes as evidence of the loan, the notes being secured by mortgage. The assessor assessed the company on solvent credits for the full face value of the notes secured by the mortgages, whereupon the company obtained an injunction restraining the county treasurer from collecting the tax assessed thereon. The notes and mortgages were held by the plaintiff corporation at its domicile in Delaware. The court said: ''Assuming that the domicile of this plaintiff is in the state of Delaware, these credits presumptively have their *situs* in that state. There is not any evidence in the record that the mortgages were in this state at any time during the year 1911; while the testimony, though not very direct or certain, tends to show that they were not. The presumption is in favor of their *situs* in the state of Delaware, and this presumption was not overcome.'' In the process of the opinion the court said: ''Counsel for appellants contend that any foreign corporation doing business in this state is liable to taxation upon its solvent credits, so far as the same arise out of business transacted in this state. '*Mobilia personam sequuntur*' is a maxim of law as old as the law itself, and, while it cannot be invoked merely

to shield one from the payment of taxes, the presumption nevertheless attaches that personal property, and particularly intangible personal property, such as credits, has its *situs,* for the purposes of taxation, only at the domicile of the owner.''

The maxim, as the foregoing authorities show, is not one of [4] universal application.   Of this ancient maxim that eminent jurist, Mr. Justice Sawyer, speaking for the supreme court of California in *People* v. *Home Ins. Co.,* 29 Cal. 534, said: ''It is true, as a general principle, that personal property follows the owner, having no *situs* apart from the owner, and is subject to the law of his domicile; but this is a fiction of law, adopted for the purposes and incidents of contracts and descents.   It may still, for the purposes of taxation and judicial proceedings, be affected by the law of the place where it is in fact situate.   This general principle applies to all personal property, whether corporeal or incorporeal.''

In *Catlin* v. *Hull,* 21 Vt. 152, it is said: ''This rule is merely a legal fiction, adopted from considerations of general convenience and policy, for the benefit of commerce and to enable persons to dispose of their property, at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country, where the same is situated.''

The supreme court of the United States, in *Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 35 L. Ed. 613, 11 Sup. Ct. Rep. 876, said: ''The old rule, expressed in the maxim *mobilia sequuntur personam,* by which personal property was regarded as subject to the law of the owner's domicile, grew up in the middle ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs.*''

In 23 R. C. L., at page 276, we find the following: "This principle was sufficiently satisfactory under the primitive conditions of the middle ages when the resident of one country rarely kept personal property in another country, and if he traveled generally carried his wealth with him. It is, however, well recognized that the rule *mobilia sequuntur personam* is a mere fiction of law, not resting of itself on any constitutional foundation. It was intended for convenience, and is not controlling when it is inconsistent with expressed provisions of statute or when justice does not demand that it should be. As between different towns and taxing districts in the same state the rule was abrogated in many cases even prior to the Revolution, and such personal property as machinery employed in manufacturing and fixtures of goods, wares and merchandise employed in trade, were taxed in the place where the manufacturing or trade was carried on, rather than in the town in which the owner lived."

The "fiction of law" that "all intangible property is presumed to have its *situs* at the domicile of the owner * * * must give way, * * * in the face of contrary facts." (*In re Thourot's Estate*, 52 Utah, 106, 172 Pac. 697.) And see *Marshall Hardware Co.* v. *Multnomah County*, 58 Or. 469, 115 Pac. 150; *Mayor etc. of Mobile* v. *Baldwin*, 57 Ala. 61, 29 Am. Rep. 712; *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604 [see, also, Rose's U. S. Notes]; *Blackstone* v. *Miller*, 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277; *State Board of Assessors* v. *Comptoir National*, 191 U. S. 388, 48 L. Ed. 232, 24 Sup. Ct. Rep. 109; *Liverpool etc. Ins. Co.* v. *Assessors*, 221 U. S. 346, 55 L. Ed. 762, L. R. A. 1915C, 903, 31 Sup. Ct. Rep. 550.

That it is the policy of this state to tax tangible property without its territorial limits is not asserted. As illustrative, if the intervener's business in New York consisted of maintaining a store on Fifth Avenue in which he dealt only in wearing apparel, it is clear that this state would not attempt to tax that merchandise. To cite other well-known instances, it will not

be contended by anyone that a resident of Montana may be taxed upon the cattle which he owns in Arizona or the sheep which he owns in Idaho. The cattle are taxed in Arizona, the sheep in Idaho.

Again, not only is the operation of state laws limited to persons and property within the boundaries of the state, but property which is wholly and exclusively within the jurisdiction of another state receives none of the protection for which the tax is supposed to be compensation. In *Catlin* v. *Hull, supra,* it is said: "We think it entirely just and equitable that, if persons residing abroad bring their property and invest it in this state, for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefit and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government, which thus protects it." (See *Armour Packing Co.* v. *City Council of Augusta,* 118 Ga. 552, 98 Am. St. Rep. 128, 45 S. E. 424; *Wilkey* v. *City of Pekin,* 19 Ill. 160; *State Board of Assessors* v. *Comptoir National, supra;* *Redmond* v. *Commissioners,* 87 N. C. 122; *State* v. *Falkinburge,* 15 N. J. L. 320; *People* v. *Gardner,* 51 Barb. (N. Y.) 352; *Poppleton* v. *Yamhill County,* 18 Or. 377, 7 L. R. A. 449, 23 Pac. 253.) In *State* v. *Falkinburge, supra,* it is said: "A man's personal property, his choses in action, his trade and business, need and receive the protection of the laws of that country where they are situate, accruing, or carried on. They have all the benefit resulting from the society in whose midst they are, without regard to the owner's residence. They should therefore pay their part of the expense of maintaining and administering those laws, and supporting that society."

Counsel have argued at great length as to whether shares of [5] stock employed as are the Thornton stocks are to be deemed tangible or intangible property. Shares of stock in corporations have a large place in every-day transactions in the business world. They are daily bought and sold upon the world's exchanges, are the subject of larceny, and, indeed, are

property in the highest sense of the term. In view of these facts many courts consider them tangible property, others as *quasi* tangible, and others, no doubt the majority, as intangible. But, deeming them, and correctly, we think, to be intangible property, yet, held and used in business as they have been and are, we reach the same result in this case as if they be considered tangible property. Judge Taft, in *Walker* v. *Jack,* 88 Fed. 576, 31 C. C. A. 462, after stating the general rule that intangible property is taxable at the residence of its owner, said: "Certain exceptions to this rule are recognized. One is where the chose in action is represented by a negotiable bond, property in which passes by delivery. In such a case the evidence of title is in such form, and is so important an element of the value of what it represents, as to make it closely analogous to tangible property, and to give it a *situs* for taxation where the negotiable evidence of its existence actually is, even though the owner may live elsewhere." As will be mentioned soon, this exception is very generally applied to shares of stock as well as to bonds.

Our Constitution and statutes, in so far as the principles of taxation are concerned, do not make any distinction between tangible and intangible property whatever. Both are taxable. That shares of stock are recognized directly as objects of taxability we have already adverted to. If they are owned by one who has his domicile in this state the presumption is that they have their *situs* here. (*Monidah Trust* v. *Sheehan, supra;. Holland* v. *Commissioners, supra.*) That this state may tax a [6] resident upon his stocks in foreign corporations which have no *situs* other than the domicile of their owner is beyond any question whatever. (Const., Art. XII, sec. 17; secs. 1996, 1997, Rev. Codes 1921; *San Francisco* v. *Fry,* 63 Cal. 470; *Greenleaf* v. *Board,* 184 Ill. 226, 75 Am. St. Rep. 168, 56 N. E. 295; *Seward* v. *City of Rising Sun,* 79 Ind. 351; *Cook* v. *Board of Commrs. of Marion County,* 175 Ind. 218, 92 N. E. 876; *Judy* v. *Beckwith,* 137 Iowa, 24, 15 Ann. Cas. 890, 15 L. R. A. (n. s.) 142, 114 N. W. 565; *Ogden* v. *City of St. Joseph,* 90

Mo. 522, 3 S. W. 25; *Bacon* v. *Board of State Tax Commrs.*, 126 Mich. 22, 86 Am. St. Rep. 524, 60 L. R. A. 321, 85 N. W. 307; *State* v. *Nelson*, 107 Minn. 319, 119 N. W. 1058; *State* v. *Bentley*, 23 N. J. L. 532; *Worth* v. *Commissioners*, 82 N. C. 420, 33 Am. Rep. 692; *Bradley* v. *Bauder*, 36 Ohio St. 28, 38 Am. Rep. 547; *McKeen* v. *County of Northampton*, 49 Pa. 519, 88 Am. Dec. 515; *Dyer* v. *Osborne*, 11 R. I. 321, 23 Am. Rep. 460; *Sturges* v. *Carter*, 114 U. S. 511, 29 L. Ed. 240, 5 Sup. Ct. Rep. 1014 [see, also, Rose's U. S. Notes] ; *Wright* v. *Louisville & N. R. Co.*, 195 U. S. 219, 49 L. Ed. 167, 25 Sup. Ct. Rep. 16; *Kidd* v. *Alabama*, 188 U. S. 730, 47 L. Ed. 669, 23 Sup. Ct. Rep. 401; *Central of Georgia Ry. Co.* v. *Wright*, 207 U. S. 127, 12 Ann. Cas. 463, 52 L. Ed. 134, 28 Sup. Ct. Rep. 47; *Darnell* v. *Indiana*, 226 U. S. 390, 57 L. Ed. 267, 33 Sup. Ct. Rep. 120; *Hawley* v. *Malden*, 232 U. S. 1, Ann. Cas. 1916C, 842, 58 L. Ed. 477, 34 Sup. Ct. Rep. 201.) Such stocks are relieved of taxation only in case "the property of such company or corporation represented by such stocks is within the state and has been taxed." This applies to residents as well as nonresidents.

That the stocks of nonresidents which have a *situs* here should be taxed here is clearly within the intent of the language of section 17, Article XII, Constitution, and sections 1996 to 2012, Revised Codes of 1921. If we were to read into the statute the fiction *mobilia sequuntur personam* imposing an opposite principle, the state thus would not be able to tax such stocks because their *situs* would be presumed conclusively to be at the domicile of their owner. Acknowledging that we have the right to tax the stocks of nonresidents which have a *situs* here, we must by correct principles of comity allow a corelative right to every other taxing jurisdiction.

But, as indicated above, there is well-recognized exception to the general rule that intangibles have their *situs* at the domicile of their owner, as where there is such a combination of circumstances "as produce what is referred to in the books as a business *situs* as distinguished from the domicile of the owner."

(*Endicott, Johnson & Co.* v. *Multnomah County,* 96 Or. 679, 190 Pac. 1109.)    That this rule is sustained by the great weight of authority, see *Stanford* v. *San Francisco,* 131 Cal. 34, 63 Pac. 145; *Armour Packing Co.* v. *City Council of Augusta,* 118 Ga. 552, 98 Am. St. Rep. 128, 45 S. E. 424; *Armour Packing Co.* v. *Clark,* 124 Ga. 369, 52 S. E. 145; *Matzenbaugh* v. *People,* 194 Ill. 108, 88 Am. St. Rep. 134, 62 N. E. 546; *Hathaway* v. *Edwards,* 42 Ind. App. 22, 85 N. E. 28; *Buck* v. *Miller,* 147 Ind. 586, 62 Am. St. Rep. 436, 37 L. R. A. 384, 47 N. E. 8; *Hutchinson* v. *Board,* 66 Iowa, 35, 23 N. W. 249; *Heinz* v. *Board,* 121 Iowa, 445, 96 N. W. 967; *Commonwealth* v. *Avery,* 163 Ky. 828, 174 S. W. 518; *Commonwealth* v. *West India Oil Ref. Co.,* 138 Ky. 828, 36 L. R. A. (n. s.) 295, 129 S. W. 301; *Monongahela, etc.,* v. *Board,* 115 La. 564, 112 Am. St. Rep. 275, 2 L. R. A. (n. s.) 637, 39 South. 601; *National F. I. Co.* v. *Assessors,* 121 La. 108, 26 L. R. A. (n. s.) 1120, 46 South. 117; *Travelers' Ins. Co.* v. *Assessors,* 122 La. 129, 24 L. R. A. (n. s.) 388, 47 South. 439; *Standard Marine Ins. Co.* v. *Assessors,* 123 La. 717, 29 L. R. A. (n. s.) 59, 49 South. 483; *In re Jefferson,* 35 Minn. 215, 28 N. W. 256; *State* v. *London etc. Co.,* 80 Minn. 277, 83 N. W. 339; *People ex rel. Bijur* v. *Barker,* 155 N. Y. 330, 49 N. E. 940; *Finch* v. *York County,* 19 Neb. 50, 56 Am. Rep. 741, 26 N. W. 589; *Redmond* v. *Rutherford,* 87 N. C. 122; *Marshall Hardware Co.* v. *Multnomah County,* 58 Or. 469, 115 Pac. 150; *Billinghurst* v. *Spink County,* 5 S. D. 84, 58 N. W. 272; *McKennon* v. *McFall,* 127 Tenn. 393, 155 S. W. 158; *Hall* v. *Miller,* 102 Tex. 289, 115 S. W. 1168; *Jesse French Piano etc. Co.* v. *Dallas* (Tex. Civ. App.), 61 S. W. 942 (not officially reported); *Walker* v. *Jack,* 88 Fed. 576, 31 C. C. A. 462; *Western Assur. Co.* v. *Halliday,* 126 Fed. 257, 61 C. C. A. 271; *Leavell* v. *Blades,* 237 Mo. 695, 141 S. W. 893.

The general principle underlying this exception has been recognized by the supreme court of the United States in many cases (*Tappan* v. *Merchants' National Bank,* 19 Wall. 490, 22 L. Ed. 189 [see, also, Rose's U. S. Notes]; *Pullman Car Co.* v. *Pennsylvania,* 141 U. S. 18, 35 L. Ed. 613, 11 Sup. Ct. Rep.

876; *State Board of Assessors* v. *Comptoir National,* 191 U. S. 388, 48 L. Ed. 232, 24 Sup. Ct. Rep. '109; *New Orleans* v. *Stemple,* 175 U. S. 309, 44 L. Ed. 174, 20 Sup. Ct. Rep. 110; *Bristol* v. *Washington County,* 177 U. S. 133, 44 L. Ed. 701, 20 Sup. Ct. Rep. 585; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct. Rep. 36; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 51 L. Ed. 853, 27 Sup. Ct. Rep. 499; *New York ex rel. Burke* v. *Wells,* 208 U. S. 14, 52 L. Ed. 370, 28 Sup. Ct. Rep. 193; *Wheeler* v. *New York,* 233 U. S. 434, 58 L. Ed. 1030, 34 Sup. Ct. Rep. 607), and so far as we are aware has never been denied by that court. Certainly, *Buck* v. *Beach,* 206 U. S. 392, 11 Ann. Cas. 732, 51 L. Ed. 1106, 27 Sup. Ct. Rep. 712, *Fidelity & Columbia Transit Co.* v. *Louisville,* 245 U. S. 54, L. R. A. 1918C, 124, 62 L. Ed. 145, 38 Sup. Ct. Rep. 40, or *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325, 64 L. Ed. 931, 40 Sup. Ct. Rep. 558, do not deny it.

Of course, if the shares of stock in a given instance are kept [7] out of the state for the purpose of evading taxation, they are not within the rule as to business *situs,* but are controlled by the maxim *mobilia sequuntur personam,* and will be taxed at the domicile of their owner. Or, if they are out of the state for a special and temporary purpose, as where they are simply pledged for the payment of a debt, their *situs* for the purpose of taxation will be controlled by that principle, as was the case in *Stanford* v. *San Francisco,* 131 Cal. 34, 63 Pac. 145.

In the instant case it is unquestioned that the Thornton shares have a business *situs* in the state of New York; they are actually there, and always have been. Under the admitted facts it must be held under the policy so long maintained in the territory and state of Montana, which we believe to be consonant with the true principles governing taxation—a policy which frowns upon double taxation in any form; and which simply demands of persons a just contribution to the support of the government under which they enjoy the protection which makes their business possible—the assessment of the Thornton

stocks is not commanded; and that the assessor of Silver Bow county was right in refusing to list them as taxable property within his jurisdiction.

We are under obligation to respective counsel for the very able and exhaustive briefs which they have presented.

The order to show cause is discharged and the proceeding dismissed.

*Dismissed.*


ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

---

### ON MOTION FOR REHEARING.

(Decided July 16, 1923.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The attorney general has filed a petition for rehearing which, like many such documents, consists chiefly of the loser's assertion of dissatisfaction over an adverse decision.

Changing front, he now urges that, in view of our decision and upon the assumption that New York does not tax shares of stock, those in question are not taxed anywhere, and therefore we should have reached a different conclusion. Upon the trial of this cause he represented to the court in his argument, and correctly, that whether New York taxes the stocks is wholly immaterial to this inquiry. In his original brief he said: "As a matter of fact, New York does not now impose and has not for many years imposed a tax upon stocks of foreign corporations held within the state by her own citizens, much less on those held by citizens domiciled elsewhere. New York, no doubt, finds this policy sufficiently remunerative by reason of the great number of stocks attracted to that state by the stock markets and the collection of sales taxes on shares bought and

sold on the stock exchange, which appears to be the only tax imposed in New York affecting shares of stock. The policy of New York in regard to taxation of shares of stock can have no bearing on the policy of this state in regard to taxation.''

Montana levies its taxes without reference to the laws of other states, and regardless of what they do in that respect. So it is obvious that it makes no difference to Montana what New York does with respect to taxing these stocks. If they were in California, that state would tax them if they had a *situs* there, irrespective of the domicile of their owner. Nearly all states would do the like. In our original opinion we said ''that this state may tax a resident upon his stocks in foreign corporations which have no *situs* other than the domicile of their owner is beyond any question whatever,'' and, while unnecessary to say so, it may be added this state may impose the tax even if the stocks are also taxed in the home state of the corporation. (See authorities in original opinion.)

The only question presented or which could be presented to us in this case is whether under our laws the stocks are subject to the taxing jurisdiction of this state. Upon the agreed facts as counsel have made up the record, there is not a Montana dollar invested in the Thornton stocks. As a fact, as distinguished from fiction, they are as foreign to our jurisdiction as if they were cattle browsing upon the Adirondack hills. The stocks were bought with New York money, and are a part of a New York business. Yet in view of these facts the attorney general asserts that the court's opinion is not consonant with the trend of modern authority. In this he is in error; the contrary is the fact. As noted in the opinion, the ancient fiction *mobilia sequuntur personam*, while satisfactory under the primitive conditions of the middle ages, is not suited to modern business conditions as a rule of universal application. The law has developed progressively beyond the narrow limits of the maxim. The fact is that the rule growing out of the business *situs* of intangibles, as distinguished from the domicile of the owner, is not only consistent with the trend of modern

judicial authority, but is of well-nigh universal application in this country. An examination of the attorney general's briefs will disclose that he has not cited a single well-considered authority which even militates against the rule.

This court's decision is based upon the law of this state which has been in force for a third of a century. It is not based upon a rule of comity initiated by this court.

Remarkable to relate, the attorney general has assumed that [8] this court has the authority to declare the policy of this state upon the subject before us—as to a subject upon which the law-making body has for so long declared the policy—and urges the court to declare in support of his contention. We have but declared the law as we found it. It is not the function of this court to declare the policy of this state respecting matters upon which the legislature has spoken. The court may on occasion declare which of two conflicting principles of law is best suited to our local conditions, taking into consideration our history and general policy as indicated by our Constitution and statutes.

Trite as it may appear, we again call attention to the fact that this court has no legislative functions, and will not attempt to assume any. This court is not concerned with policy or politics. It will endeavor to declare the law as it finds it. If the law as declared does not meet with popular approval, there is always a way to amend it. We should be unfaithful to our duty if we were to say the law authorizes that which it does not.

The motion for rehearing is denied.

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.