## In re THOUROT'S ESTATE

### No. 3161.   Decided April 19, 1918.   (172 Pac. 697.)

1. TAXATION—SITUS—DETERMINATION. The fiction of law that all intangible property is presumed to have its situs at the domicile of the owner must give way, in the face of contrary facts. (Page 112.)

2. TAXATION—PROPERTY SUBJECT—SITUS. Under Comp. Laws 1907, Sections 2501, 2505, 2506, 2515, 2516, 2545, 2613, 2677, as to assessing and collecting taxes, property of estate of non-resident testator, while in the hands of a resident executor having absolute and exclusive control, is within jurisdiction of the state for purposes of taxation, at least during time of administration. (Page 112.)

3. TAXATION—RIGHT OF STATE TO TAX. The right of the authorities of one state to tax property in its jurisdiction subject to taxation does not depend on the action of the taxing power of any other state. (Page 112.)

4. TAXATION—PROPERTY OF ESTATE—TO WHOM ASSESSABLE. That the property of a nonresident testator was assessed to the estate, and not to the executor, is immaterial, where executor had notice of assessment and made no objection, other than that property was not subject to taxation, in view of Comp. Laws 1907, section 2613, making it the duty of the district court to require the executor to pay all taxes due from the estate, and section 3956, providing that before any decree of distribution is made the court must be satisfied that all state, county, and municipal taxes legally levied upon personal property of the estate have been fully paid. (Page 112.)

Appeal from District Court of Salt Lake County, Third District; *Hon. Geo. G. Armstrong*, Judge.

Petition by Salt Lake County for an order directing E. B. Wicks as executor of the will of Peter Thourot, deceased, to pay certain taxes assessed against the estate.

Petition dismissed.   The county appeals.

REVERSED with directions.

*Robert B. Porter* for appellant.

*Hurd & Hurd* for respondent.

GIDEON, J.

Peter Thourot died testate at Jarbridge, state of Nevada, on January 23, 1915. He was at that date, and for a number of years prior thereto had been, a resident of that state. At no time did he reside within the state of Utah. On April 2, 1915, his will was admitted to probate in Salt Lake county, this state. E. B. Wicks was appointed executor. The will was executed in Salt Lake county on January 19, 1908, and had remained continuously in the possession of said Wicks in Salt Lake county from the date of its execution. Mr. Wicks was named as executor by the terms of the will, without bond. It appears that the testator left a small estate in Nevada, but there is nothing in the record to indicate that the will was ever admitted to probate in that state. The proceedings here, therefore, are not ancillary.

An inventory and appraisement was filed with the clerk of the district court of Salt Lake county on September 30, 1915, showing personal property belonging to the estate in the sum of $21,844.87, all of which property consisted either of money on deposit in a Salt Lake City bank in the name of the testator or of certificates of deposit issued by a Salt Lake City bank, except the sum of $1,200, which was evidenced by two notes secured by mortgages on real property in Salt Lake county. It also appears that the testator, in or about the year 1907, deposited certain moneys in the McCornick bank at Salt Lake City, to be loaned on real estate mortgages in Salt Lake county, and that the said moneys were so loaned for a number of years and mortgages taken in the name of the deceased. It also appears that the moneys so deposited were subject to check whenever Mr. Wicks desired to make a loan, and that the checks were signed, "Peter Thourot, by E. B. Wicks, Agent;" that Mr. Wicks would make the loans and take mortgage securities without communicating with the testator. It further appears that Thourot notified Wicks later to make no more loans, but, as rapidly as could be done, to collect in money already loaned and place the same in the bank in such form as to enable him (Thourot) to withdraw the money whenever he should require

it for the purpose of developing certain mining claims owned by him in Nevada; that accordingly Mr. Wicks did collect in all of the loans, except the two notes for $1,200, above referred to, and secured by mortgages as aforesaid. It also appears from the testimony of Mr. Wicks that, when any money was collected, he would obtain a certificate of deposit from a local bank in his own name for the amount, drawing interest payable every three or six months, and would indorse such certificates, "Payable to the order of Peter Thourot," sign his name to the indorsement, and place the certificates in his safe, and that he continued to renew such certificates from time to time until the death of Thourot.

After the executor has been appointed, the assessor of Salt Lake county assessed the property in the hands of the executor for city, county, and state taxes for the year 1915. Such taxes were not paid, and on March 22, 1916, during the administration of the estate, Salt Lake county filed its petition, asking for an order from the district court to direct the executor to pay the amount of taxes so assessed against the property of the estate. Upon a hearing the court entered judgment dismissing the petition, and ordered the assessment made by the assessor of Salt Lake county to be set aside. From that order or judgment the county appeals.

The provisions of the statutes of Utah, so far as material, respecting the authority for assessing and collecting taxes, are as follows:

Comp. Laws 1907, section 2506: "All taxable property must be assessed at its full cash value."

Section 2515: "All taxable property must be assessed in the county, city, town, or district in which it is situated."

Section 2505: "The term 'property' includes moneys, credits, bonds, stocks, franchises, and all other matters and things, real, personal and mixed, capable of private ownership. * * * "

Section 2501: "All property in this state, not exempt under the laws of the United States, or under the constitution of this state, shall be taxed. * * *"

Section 2613: "The district court must require every

administrator or executor to pay out of the funds of the estate all taxes due from such estate.    *    *    *''

Section 2516: ''The assessor must, before the first Monday of May of each year, ascertain the names of all taxable inhabitants, and all property in the county subject to taxation, except such as is required to be assessed, by the state board of equalization, and must assess such property to the person by whom it is owned or claimed, or in whose possession or control it was at 12 o'clock m. of the second day of January next preceding, and its value on that date.''

Section 2529: ''The undistributed or unpartitioned property of deceased persons may be assessed to their heirs, guardians, executors, or administrators, or any    *    *    *    of them.    *    *    *''

Section 2677: ''No assessment or act relating to assessment or collection of taxes is illegal on account of informality or because the same was not completed within the time required by law.''

Section 2545: ''Any property discovered by the assessor to have escaped assessment may be assessed at any time, and when so assessed shall be reported by the assessor to the auditor, and the auditor shall charge the county treasurer with the taxes on such property, and the treasurer shall give notice to the party assessed therewith.''

Respondent contends that under the facts stated (and there is no dispute as to the facts appearing in the record) the property belonging to the estate is not taxable in Salt Lake county; that the property consists of intangible assets, and has not, and cannot have, a situs, except the domicile of the owner, and therefore cannot be taxed in this state, but can only be taxed at the home of the testator in the state of Nevada. On the other hand, it is the contention of appellant that, under the facts stated, the property had acquired in this state what is designated by the authorities as a ''business situs''; that it was located here; that it was under the control of a resident agent, and had been left here originally for the purpose of investment, and had been so invested by such agent, and that, notwithstanding

the testator had notified his agent to collect in the loans, so that the testator might withdraw the money from this state more readily at any time his interests required, in fact such withdrawal had never been made; that the situs as established by the contract made with the agent in 1907 had never been changed; that the property was wholly located within this state and was protected by the laws of this state; that there is no claim or intimation that it had ever been assessed at the domicile of the testator, either in the year 1915 or any other time.

We do not feel called upon to determine whether, under the facts as shown by the record, the property belonging to the estate was subject to taxation under the laws of this state by reason of it having acquired such a "business situs" here as to authorize the taxing power of this state to levy and collect taxes against it, as in our judgment the conclusion of the district court must be reversed on other grounds.

As will be seen, if the property in question belonged to a resident of this state, under the provisions of our statutes it would be subject to taxation. The term "property," as defined by the statute, includes not only money, but credits, etc. While the mortgages, under the Constitution of this state, would not be subject to tax, the remaining part of the estate undoubtedly would be. But, as indicated, we do not express an opinion as to whether, under the facts, the property in question here was located in this state, so as to make it subject to taxation.

The executor was appointed on April 2, 1915. From that date on, and prior thereto during that entire year, the assets of the estate had been in his possession and under his control. The inventory of the estate filed on September 30th of that year shows that the assets were still in his possession. The property never was, in any sense, in the hands of a foreign administration. On the contrary, it specifically appears from the record that on October 1, 1915, a partial decree of distribution was made, distributing the estate direct to the sole beneficiary under the will of the deceased, who was then a resident of the state of New York.

In the case of *Taylor, Adm'r,* v. *St. Louis County Court,* 47 Mo. 594, it appears that the deceased was, at his death, a resident of Illinois, and among his assets were certain bonds issued by the Masonic Hall Association of St. Louis, Mo.; that after the appointment of the administrator in Illinois ancillary letter of administration were issued by the St. Louis county court, and the bonds in question were transmitted from Illinois to the administrator in St. Louis for the purpose of administration. The bonds were taxed in the hands of the ancillary administrator, and he sued out a writ of certiorari to review the proceedings of the St. Louis county court in making the assessment; that from an order of the circuit court setting aside the assessment the state of Missouri appealed. The statutes of Missouri made no special mention of the particular kind of property involved, but provided that taxes shall be levied "on all property, real and personal," etc. The Supreme Court of Missouri, in answering a contention similar to the one made by respondent here, in the opinion in the case above cited, says:

"Administration of so much of the estate of a nonresident as is found within our jurisdiction is ancillary, in that it becomes the duty of the administrator to transmit to the representative of the estate of the domicile any balance remaining after full administration. Yet, so far as local creditors and local distributees are concerned, the administration is complete. Until such balance be transmitted, the local administrator has full possession of all the property, and the foreign administrator had no right to intermeddle. In no sense can it be said to be in the possession of the foreign administrator, and it does not matter whether or not it may have been transmitted, or rather the evidence and representation of it, in the shape of bonds and notes, from such administrator to the local one. When transmitted for the purpose of administration, it becomes a local estate, it comes within the jurisdiction of the tribunals of the domicile of the local administrator, it seeks the protection of its laws and the enforcing process of its courts, and until the closing up of the local administration it can have no other situs."

See *Commonwealth* v. *Camden,* 142 Ky. 365, 134 S. W. 914.

It is true that by fiction of law all intangible property is presumed to have its situs at the domicile of the owner, but that fiction must give way, under all the authorities, in the face of contrary facts. The property in question in

this case was at least within the jurisdiction of this      1, 2
state during the time of the administration. The exe-
cutor here had the exclusive and absolute control of it, and
it was not subject to the orders and direction of any foreign
administration, if one existed. The courts of this state recog-
nized that by directing the executor to pay to the sole bene-
ficiary practically the entire estate at the date of the partial
distribution on October 1, 1915.

The fact that this property was or was not assessed at the
domicile of the testator is immaterial, as the right of the
authorities of one state to tax property in its jurisdic-
tion subject to taxation cannot, and does not, depend        3
on the action of the taxing power of any other state.
*Taylor, Adm'r,* v. *St. Louis County Court,* supra; *Blackstone*
v. *Miller,* 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439.

Some objection is made to the method of the assessment;
that is, that the property was assessed to the estate of Peter
Thourot and not to the executor or the beneficiary under the
will. By Comp. Laws 1907, section 2613, it is made the duty
of the district court to require the executor or administrator
to pay all taxes due from the estate. By section 3956,
it is provided that before any decree of distribution is       4
made the court must be satisfied by the oath of the
executor or administrator that all state, county, and municipal
taxes legally levied upon personal property of the estate have
been fully paid. That the executor had notice of the assess-
ment made against this property is admitted. That the aid
of the court was invoked to enforce the payment is the very
object of these proceedings. How, then, can the executor
complain as to the method of making the levy? In what way
is he injured? The very object of assessing property in the
name of the real owner is that the owner may have notice that
an assessment has been levied against his property. That the
executor was advised of the assessment is not in dispute. He
contested its payment, not on that ground, but on the ground
that the property was not subject to taxation in this state.
That contention cannot prevail.

The judgment is reversed, with directions to the district

court of Salt Lake county to enter an order directing the executor to pay such amount of tax as was due on the assessment for the year 1915. Cost to be paid of the funds of the estate.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.