No. 126,127

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REGINA M. ROGERS, as Administratrix of the ESTATE OF CRAIG ROGERS, SR.,
*Appellant,*

v.

WELLS FARGO BANK, N.A.,
*Appellee.*

SYLLABUS BY THE COURT

1.

Kansas district courts are courts of general jurisdiction. This means, among other things, that Kansas courts presume that they may hear whatever claims a plaintiff pursues. A lawsuit filed in Kansas may proceed as long as the facts included in the petition and the reasonable inferences that can be drawn from those facts state any claim upon which relief can be granted.

2.

To initiate a lawsuit in Kansas, a petition need only include a short and plain statement that gives the defendant fair notice of the plaintiff's claim and the ground upon which it rests. Courts commonly refer to this practice as notice pleading.

3.

K.S.A. 60-212(b)(6) allows a petition to be dismissed if it fails to state a claim upon which relief may be granted. Dismissal under K.S.A. 60-212(b)(6) is the exception, not the rule. Kansas courts do not use the plausibility standard for pleadings employed by federal courts under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1

4.

When a defendant moves for dismissal under K.S.A. 60-212(b)(6), the district court must resolve every factual dispute in the plaintiff's favor. The court must assume all the factual allegations in the petition—along with any reasonable inferences from those allegations—are true. The court then determines whether the plaintiff has stated a claim based on the plaintiff's theory or any other possible theory.

5.

A district court faced with a motion to dismiss under K.S.A. 60-212(b)(6) ordinarily may only consider the plaintiff's petition and any documents attached to it. A rare exception arises when a plaintiff asserts a claim based on a written instrument; courts may consider an undisputedly authentic copy of that written instrument attached to a motion to dismiss without converting the motion to a request for summary judgment. But courts will not resolve factual questions surrounding those instruments as part of a K.S.A. 60-212(b) motion. Nor will courts consider documents attached to a motion to dismiss that are not central to the plaintiff's claim or when there is a reasonable question about their applicability or authenticity.

6.

Courts presume that lawsuits filed in Kansas are governed by Kansas law. The party seeking the application of a different state's law bears the burden of persuading the courts that the other law should apply.

Appeal from Butler District Court; CHAD M. CRUM, judge. Oral argument held October 17, 2023. Opinion filed June 7, 2024. Reversed and remanded with directions.

*Kenneth H. Jack*, of Davis & Jack, L.L.C., of Wichita, for appellant.

*Michael Rudd*, of Fox Rothschild, LLP, of Kansas City, Missouri, for appellee.

Before WARNER, P.J., ATCHESON, J., and MARY E. CHRISTOPHER, S.J.

WARNER, J.: Kansas law favors resolving claims on their merits. In general, this means that a plaintiff may seek redress in Kansas courts if they file a petition that includes a short and plain statement that provides notice of the plaintiff's claim and a description of the relief sought. But not all petitions present questions that require discovery or trial. Motions to dismiss under K.S.A. 60-212 allow courts to resolve claims early, before a defendant files an answer. In particular, K.S.A. 60-212(b)(6) allows a defendant to ask the court to dismiss a petition that raises no legally supportable claims.

As the circumstances of this case illustrate, relief under K.S.A. 60-212(b)(6) is the exception, not the rule. When Craig Rogers, an Andover resident, died, he had about $38,000 in his checking and savings accounts at Wells Fargo Bank. Shortly after his death, a Wells Fargo branch in California dispersed Rogers' money to a person named Bryan Greenelsh. Rogers' estate sued Wells Fargo for wrongfully dispersing those funds and requested Wells Fargo to reimburse the money. Wells Fargo moved to dismiss under K.S.A. 60-212(b)(6), asserting facts that were not included in the Estate's petition, and presented three documents relevant to the Estate's claim. The district court granted Wells Fargo's motion and dismissed the case.

The Estate now appeals. It argues the court should not have considered matters outside its petition when evaluating a motion to dismiss under K.S.A. 60-212(b)(6). Rather, it should have allowed the Estate an opportunity to conduct discovery on Wells Fargo's assertions and to meaningfully respond to the bank's factual allegations. The Estate also argues that the district court erred when it determined that its claim was barred as a matter of law. After carefully reviewing the parties' arguments and the Estate's petition, we agree the district court erred. We thus reverse the district court's dismissal and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Rogers died in January 2022 and had been living in Andover for some time. Rogers' estate was probated in Butler County District Court, but that probate case is not part of this appeal.

In June 2022, Rogers' daughter—acting as the administrator of her father's estate—filed a lawsuit against Wells Fargo. The petition indicated that Rogers had previously held savings and checking accounts at the bank. According to the petition, someone named Bryan Greenelsh arrived at a Wells Fargo branch in March 2022, seeking to withdraw $38,260.28 from Rogers' accounts, and Wells Fargo wrongfully dispersed those funds to Greenelsh. The petition alleged that the Estate had subpoenaed Wells Fargo in the probate case, requesting documentation relating to those payments, but Wells Fargo had not complied with its request. The Estate sought repayment of the wrongfully distributed funds and other relief.

Wells Fargo moved to dismiss the Estate's petition under K.S.A. 60-212(b)(6). The bank's motion included several factual statements not contained in the petition:

- Rogers opened checking and savings accounts at Wells Fargo while he was living in Utah in 2008.

- In March 2022, Greenelsh presented a Utah Affidavit of Collection of Estate Assets to a Wells Fargo branch in California. This affidavit said that Greenelsh was entitled to the funds in Rogers' accounts and that no estate had been opened in any state. (These statements in Greenelsh's affidavit were false.)

- This affidavit caused the Wells Fargo branch in California to disperse the requested approximately $38,000 to Greenelsh.

4

Wells Fargo attached two documents to its motion—the Utah Affidavit Greenelsh had presented to the California branch and an account application Rogers filled out in 2008.

Citing Kansas choice-of-law principles, Wells Fargo argued that Utah law should govern this case, as the account agreement was filled out in Utah and the original bank account was opened there. The bank claimed that it would not be liable to the Estate under Utah law, as Utah imposed no obligation on persons receiving affidavits such as the one Greenelsh provided to ascertain the truth of that information. Instead, Wells Fargo asserted, the Estate's only remedy was to pursue a claim against Greenelsh for wrongfully claiming and accepting the funds.

The Estate responded that the allegations in Wells Fargo's motion to dismiss were improper because they included allegations and documents that were not part of the petition. The Estate argued that Wells Fargo's motion should be treated as a motion for summary judgment, and the Estate should be given an opportunity to conduct discovery regarding the allegations and documents there, along with any other matters material to the case. Alternatively, the Estate argued that if the district court declined to treat the motion as one for summary judgment, it should be permitted to amend its petition to include other allegations and clarify its claims.

Wells Fargo filed a reply, attaching an account agreement covering all Wells Fargo consumer accounts that had been updated in October 2021. The account agreement, which was roughly 40 pages long, contained a choice-of-law provision in a section titled, "Laws governing your account." This provision stated: "This Agreement, your accounts, services and any related disputes are governed by United States law and (when not superseded by United States law) the laws of the state where you opened your account (without regard to conflict of laws principles)." Wells Fargo asserted that under this provision, Utah law must govern Wells Fargo's handling of Rogers' accounts, including

its payment of the account funds to Greenelsh by way of the Utah Affidavit. Wells Fargo argued that it would be futile to allow the Estate to amend its petition because the court would be faced with these same arguments and defenses regardless of the claims raised.

After a hearing, the district court granted Wells Fargo's motion and dismissed the case. The court first concluded that it need not treat the bank's request as one for summary judgment. The court found that it could consider the documents attached to Wells Fargo's motion and reply—the 2008 account application, the 2021 account agreement, and Greenelsh's affidavit—in deciding Wells Fargo's motion to dismiss, as those documents were "simply the contractual documents" and thus "not matters outside of the pleadings." Thus, the court concluded that Wells Fargo's motion was not required to comply with the procedural safeguards applicable to the summary-judgment stage.

After reviewing these documents, the district court ruled that Utah law applied. It then found, based largely on Wells Fargo's allegations, that Utah law released Wells Fargo from all liability for dispersing funds to Greenelsh. Based on this finding, the court concluded the Estate's petition did not state a claim for relief. The court also denied the Estate's motion to amend its petition, agreeing with Wells Fargo that any amendment would be futile. The court thus dismissed the Estate's petition.

The Estate moved to set aside the judgment, disputing the district court's dismissal and the procedure leading up to that ruling. The court again denied the Estate's motion. It found that even if the Estate had not received some of the documents attached to Wells Fargo's filings until after the bank filed its reply (in the case of the account agreement), the Estate had that agreement at the time of the hearing on the motion to dismiss and for purposes of the postjudgment filings. And the court reiterated its ruling that Utah law governed this case and, in the court's assessment, immunized Wells Fargo from any liability for its payments to Greenelsh. The Estate appeals.

DISCUSSION

Kansas district courts are courts of general jurisdiction. This means that a person filing a lawsuit in Kansas does not need to affirmatively demonstrate that they may pursue their claims in our courts for a case to proceed. Instead, the Kansas Rules of Civil Procedure merely require a petition to include "[a] short and plain statement of the claim showing [the plaintiff] is entitled to relief" and "a demand for judgment." K.S.A. 2023 Supp. 60-208(a)(1); *John Doe v. M.J.*, 315 Kan. 310, 317, 508 P.3d 368 (2022). In other words, to initiate a lawsuit in Kansas, a petition need only include "'a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" 315 Kan. at 317. Courts commonly refer to this practice as notice pleading. See 315 Kan. at 317-18.

K.S.A. 2023 Supp. 60-212(b)(6) allows a petition to be dismissed if it "fail[s] to state a claim upon which relief can be granted." Under this provision, a district court may dismiss a petition at the outset of litigation—before any responsive pleading is filed and before any discovery takes place—when the petition raises no legally cognizable claims. Kansas appellate courts have repeatedly cautioned, however, that dismissal under this provision "is the exception, not the rule." *Minjarez-Almeida v. Kansas Bd. of Regents*, 63 Kan. App. 2d 225, 232, 527 P.3d 931 (2023).

When a defendant requests dismissal under K.S.A. 60-212(b)(6), the district court "'must resolve every factual dispute in the plaintiff's favor.'" *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019). In doing so, the court must assume all the factual allegations in the petition—along with any reasonable inferences from those allegations—are true. The court then determines whether the plaintiff has stated a claim "based on [the] plaintiff's theory or any other possible theory." *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). Dismissal is only appropriate when

the well-pleaded facts and inferences therefrom fail to support "'*any* claim upon which relief can be granted.'" *Kudlacik*, 309 Kan. at 790.

Because the appropriateness of dismissal under K.S.A. 60-212(b)(6) is a legal question based solely on the petition, appellate courts give no deference to the district court's assessment of a defendant's dismissal motion. Instead, we apply these same standards on appeal—resolving factual disputes in the plaintiff's favor and affirming dismissal only when the facts in the petition do not support any claims for relief. See *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021).

The Estate argues the district court erred in two broad ways when it granted Wells Fargo's motion to dismiss.

- The Estate asserts that the procedure leading to that dismissal was improper, as the motion alleged—and depended on—facts beyond the petition, including the documents Wells Fargo attached to its motion and reply. The Estate asserts that under Kansas law, the district court should have subjected that motion to the rigors of the summary-judgment procedure. The Estate claims that it never had the opportunity to conduct discovery in this case, and the only documents before the court were the limited documents that Wells Fargo provided.

- The Estate also asserts that dismissal of the claims in its petition was improper, as questions remain as to whether Utah law should govern the outcome in this case. And even if Utah law does apply, the Estate questions whether the Utah statute cited by Wells Fargo—a statute whose scope has not been meaningfully interpreted by Utah courts—compels the outcome the district court followed here.

Wells Fargo responds that the allegations contained in the Estate's petition were minimal, and the Estate should not be permitted to avoid dismissal by excluding facts that

would resolve the case in the bank's favor. Wells Fargo also asserts that the district court did not err in consulting and relying on the documents it attached to its various filings; it argues that the Estate did not meaningfully dispute the authenticity of those documents, and those documents, read together, showed the Estate could not prevail on its claim.

For the reasons we explain here, we agree with the Estate's procedural argument and thus need not reach its substantive challenge to the district court's ruling.

1. *Kansas courts continue to use a notice-pleading standard—not the federal plausibility standard—to evaluate the legal sufficiency of plaintiffs' petitions.*

Before analyzing the parties' respective arguments about the district court's dismissal of the Estate's complaints, we must address a preliminary question about the continued viability of the standard Kansas courts use to evaluate motions to dismiss under K.S.A. 60-212(b)(6).

In its briefing, Wells Fargo acknowledges that Kansas courts use a notice-pleading standard for evaluating the sufficiency of a petition. But it cites a handful of federal decisions that have affirmed the dismissal of federal lawsuits under an approach like the one the district court used here—reviewing account agreements and applications and concluding the respective plaintiffs had not demonstrated they were entitled to relief. Wells Fargo urges us to follow these rulings, which are based on the standard federal courts now use for analyzing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Wells Fargo reiterated this request during oral argument, noting that the Kansas notice-pleading standard is overly onerous on defendants, as it allows a plaintiff to file a barebones placeholder petition without providing information about the ultimate claims the plaintiff plans to pursue.

Kansas courts were faced with a similar argument in *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019)—that Kansas courts should "adopt and apply a federal standard for review of motions to dismiss that is more difficult for plaintiffs to meet than the traditional Kansas standard." The Kansas Court of Appeals rejected that request, concluding it was bound by longstanding Kansas Supreme Court precedent holding that Kansas courts only require notice pleading. See *Williams v. C-U-Out Bail Bonds*, 54 Kan. App. 600, 605, 402 P.2d 558 (2017), *rev'd on other grounds by* 310 Kan. 775. On review, the Kansas Supreme Court similarly declined the invitation to adopt the federal standard. *Williams*, 310 Kan. at 785.

Our discussion could end here. Like the panel in *Williams*, we are duty-bound to follow Kansas Supreme Court precedent unless the court has signaled an intention to depart from its previous caselaw. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). But we also note that the history of our notice-pleading standard demonstrates why a distinction exists between dismissals under Kansas and federal law and explains the wisdom of maintaining a more permissive standard under state law.

In the late 1800s, Kansas courts, like our federal counterparts, followed a rigorous pleading standard known as code (or form) pleading. *Auld and Auld v. Butcher and Butcher*, 2 Kan. 135, 141, 143, 1863 WL 319 (1863); *Zane v. Zane*, 5 Kan. 134, 137-38, 1869 WL 414 (1869). Code pleading relied heavily on the allegations and claims in the plaintiff's petition throughout the proceedings, using it to govern the entire course of the lawsuit. *Auld and Auld*, 2 Kan. at 141, 143. Petitions were limited to one "distinct and definite theory" of relief, and plaintiffs could not pursue recovery under "a theory essentially different from the one [the petition] alleged." *Grentner v. Fehrenschield*, 64 Kan. 764, 766, 769, 68 P. 619 (1902). Petitions under the code-pleading standard were required to contain "*every* fact that [was] essential" to the claim that the plaintiff had pre-selected. *Auld and Auld*, 2 Kan. at 141.

Courts enforced this code-pleading standard strictly, finding a failure to state all essential facts of a cause of action as "'an incurable defect.'" 2 Kan. at 142. A defendant could "take advantage of this defect" at any time and have the case dismissed, even after a verdict for the plaintiff had been rendered—known as an arrest of judgment. 2 Kan. at 140. Even the most meticulous plaintiffs struggled to comply with code pleading's burdensome requirements, driving courts themselves to admit that the code resulted in an "obnoxious practice." 2 Kan. at 141.

In the early 1900s, Kansas courts shifted to a new pleading system that was rooted in providing a defendant notice of a plaintiff's claims and allowing investigation during the lawsuit to fill in details. *Brooks v. Weik*, 114 Kan. 402, 407-09, 219 P. 528 (1923). The *Brooks* court explained that under this new standard, it was "enough fairly to inform the defendant what the suit is about, and even if inconsistencies appear, they are not fatal if, on any theory, the plaintiff states a cause of action." 114 Kan. at 408; see also *Railway Co. v. Murphy*, 75 Kan. 707, 710, 90 P. 290 (1907); *Grenola State Bank v. Lynam*, 123 Kan. 275, 276-77, 255 P. 44 (1927); *Parkhurst v. Investors Syndicate*, 138 Kan. 7, 10-11, 23 P.2d 589 (1933) (all applying a similar standard). Courts also began allowing plaintiffs to amend their petitions more liberally. *Snehoda v. National Bank*, 115 Kan. 836, 839-40, 224 P. 914 (1924). And courts no longer required plaintiffs to plead a single, pre-selected cause of action. See *Pratt v. Barnard*, 159 Kan. 255, 257-58, 154 P.2d 133 (1944).

The Kansas Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure and became effective in 1964, codified this new approach. Both K.S.A. 1963 Supp. 60-212 and Federal Rule of Civil Procedure 12 adopted the principle that a "'complaint should not be dismissed merely because [a] plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.'" *Monroe v. Darr*, 214 Kan. 426, 430, 520 P.2d 1197 (1974).

For years, both Kansas and federal courts continued to use this notice-pleading standard. But a little over 15 years ago, federal courts began to move toward a more demanding pleading requirement. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Under the *Twombly-Iqbal* standard now used in federal courts, a plaintiff's initial pleading must include a short, plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. at 678. Our Kansas Supreme Court has recognized that the federal plausibility standard is "more difficult for plaintiffs to meet than the traditional Kansas standard." *Williams*, 310 Kan. at 784.

This more stringent pleading standard is rooted, in part, in the recognition that federal courts are courts of limited jurisdiction. See *Galvin v. Del Toro*, 586 F. Supp. 3d 1, 8 (D.D.C. 2022); *Morgan v. Cochise County Board of Supervisors*, 487 F. Supp. 3d 789 (D. Ariz. 2020); *Garcia v. Jones*, No. 6:22-cv-00118-AA, 2022 WL 2754853, at *3 (D. Or. 2022) (unpublished opinion). Federal courts "possess only that power authorized by [the United States] Constitution and [federal] statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). This means, as a practical matter, that federal courts presume that a plaintiff's claim "lies outside this limited jurisdiction," and the plaintiff bears the burden of proving otherwise. 511 U.S. at 377. In other words, a plaintiff in a federal case must plead their way *into* federal court, demonstrating the case presents a plausible claim that a federal court may consider.

Kansas courts do not have these same limitations or their corresponding pleading requirements. State courts, as courts of general jurisdiction, have nearly "unlimited jurisdiction" over most claims. See *Turner v. Bank of North America*, 4 U.S. 8, 10, 1 L. Ed. 718 (1799); see also *Chalmers v. Burrough*, 314 Kan. 1, Syl. ¶ 2, 494 P.3d 128 (2021) (Kansas district courts are courts of "general jurisdiction unless otherwise provided by law."). Unlike their federal counterparts, Kansas district courts presume that a claim "is within [their] jurisdiction unless the contrary appears." *Turner*, 4 U.S. at 10. That is, we presume Kansas courts may hear whatever claims a plaintiff pursues. And instead of requiring a plaintiff to demonstrate that a claim belongs in a Kansas court, a lawsuit filed in Kansas may proceed as long as the facts included in the petition and the reasonable inferences that can be drawn from those facts "state *any* claim upon which relief can be granted." *Williams*, 310 Kan. 775, Syl. ¶ 2.

Thus, as the Kansas Supreme Court reiterated in *Williams*, Kansas courts have "'sound reasons for exercising judicial skepticism towards dismissal of a petition for failure to state a claim prior to the completion of discovery.'" 310 Kan. at 785. Our Supreme Court has not indicated a willingness to depart from this century-old standard. And the history and breadth of Kansas courts' jurisdiction demonstrate the wisdom of continuing to evaluate petitions under a notice-pleading approach. We decline Wells Fargo's invitation to adopt the federal courts' plausibility analysis for motions to dismiss.

2. *The district court erred when it dismissed the lawsuit based on allegations and documents outside the Estate's petition.*

As we have indicated, K.S.A. 2023 Supp. 60-208(a) requires a petition to include a "short and plain statement" showing the plaintiff is entitled to relief and a description of the relief sought. The petition merely commences the lawsuit—it "is not intended to govern the entire course of the case." *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 918, 257 P.3d 287 (2011). The "theory on which the modern lawsuit is tried is

13

shaped by the facts [that] are unveiled through the discovery process." *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 233, 805 P.2d 1244 (1991). And the "legal issues and theories on which the case will be decided" are "ultimate[ly]" defined by the final pretrial order. *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009).

The Estate's petition alleged that Rogers had a checking account and a savings account with Wells Fargo and that Wells Fargo "wrongfully" distributed over $38,000 out of those accounts to Greenelsh. The Estate argued that Wells Fargo should be required to return those funds, plus interest and the costs of the lawsuit.

Wells Fargo asserts that the nature of the Estate's claim (or claims) was unclear from these allegations. We note, however, that Wells Fargo did not ask the district court to order the Estate to amend its petition to include a more definite statement of its claim. See K.S.A. 2023 Supp. 60-212(e). Instead, Wells Fargo asked the district court to dismiss the petition entirely, asserting it failed to state any claim for relief.

Although Wells Fargo fashioned its motion as requesting dismissal under K.S.A. 60-212(b)(6), it did not really assert—beyond recitation of the statutory standard—that the Estate failed to state a claim in its petition. Rather, the motion asserted that the Estate *should not prevail* in its lawsuit against Wells Fargo. Wells Fargo essentially sought judgment as a matter of law based on its defense that Utah law should govern the Estate's claim and its belief that Utah law immunized the bank's actions. To support these defenses, Wells Fargo asserted several matters outside the petition—that Rogers originally opened his Wells Fargo accounts in Utah, that these accounts were governed by Utah law, that Greenelsh provided a Utah Affidavit to a bank branch in California, and that Utah law required the bank to pay Greenelsh without taking any further precautionary measure and immunized it from suit.

In granting Wells Fargo's motion, the district court inverted the standards governing K.S.A. 60-212(b)(6) motions. Instead of presuming the facts in the petition were true and evaluating the petition to see whether it stated any claim for relief, the court presumed that the facts in *Wells Fargo's motion* were correct. Rather than allowing the Estate an opportunity to conduct discovery based on these allegations and controvert any of those facts through the summary-judgment procedure, the court's journal entry dismissing the case stated the court had "made findings of fact" based on the record before it. This procedure is fundamentally at odds with longstanding Kansas caselaw and requires reversal. See *Kudlacik*, 309 Kan. at 790; *Cohen*, 296 Kan. at 546.

On appeal, Wells Fargo acknowledges that Kansas courts ordinarily may not venture outside the petition when evaluating a motion to dismiss. But it points out that Kansas caselaw allows district courts to consider some documents that are not attached to the petition but are "central to the plaintiff's claim" without converting a motion to dismiss to a motion for summary judgment. *Crosby v. ESIS Insurance*, No. 121,626, 2020 WL 6372266, at *2 (Kan. App. 2020) (unpublished opinion), *rev. denied* 314 Kan. 854 (2021). The Estate argues that the district court could rely on this exception to consider the three documents that Wells Fargo attached to its motion and reply to support its defenses.

It is well settled that a district court faced with a motion to dismiss may only consider the plaintiff's petition and any documents attached to it. See *Minjarez-Almeida*, 63 Kan. App. 2d at 242. As Wells Fargo notes, however, we have recently recognized a rare exception to this rule that applies in some cases founded on written instruments. See 63 Kan. App. 2d at 242; *Crosby*, 2020 WL 6372266, at *2-3. In these cases, when the plaintiff's claim hinges on the language of a written instrument not attached to the petition, Kansas courts may consider an undisputedly authentic copy of that written instrument attached to a motion to dismiss without converting that request to one for summary judgment.

This limited exception is an extension of a special pleading rule reserved for written instruments. K.S.A. 2023 Supp. 60-209(h) allows a plaintiff asserting a claim that arises from a written instrument—like a claim for breach of a written contract—to describe the contents of that document in their petition or to attach the document to the pleading. We found in *Crosby* that a plaintiff "should not be permitted to circumvent dismissal" by thwarting this rule—that is, "by failing to attach or accurately describe a written contract on which a lawsuit is based when no one disputes a contract's authenticity." 2020 WL 6372266, at *3.

The circumstances in *Crosby* illustrate when this narrow exception applies. Tywana Crosby's petition alleged that she and ESIS Insurance had a written contract to rent a car and that ESIS had breached that contract, causing Crosby damages. Crosby did not provide any more information about the alleged contract and did not attach it to her petition. ESIS moved to dismiss the lawsuit under K.S.A. 60-212(b)(6) and attached a copy of a written contract between Crosby and a car rental company—not ESIS. ESIS alleged that Crosby did not have a contract with it and had sued the wrong party. In response, Crosby did not dispute the authenticity of the contract or ESIS's assertion that her contract was with a different company. Under those limited facts, we found that Crosby should have attached the contract to her petition, and the failure to do so did not prevent the court from considering that contract when assessing whether Crosby's petition stated a claim against ESIS. 2020 WL 6372266, at *3.

We also applied this rule in *Minjarez-Almeida*, but with a different outcome. There, students claimed that Kansas State University had breached its contract with them in various ways during the COVID-19 pandemic. The university claimed that it had no contract with the students to provide the services they claimed were lacking. At the same time, it attached to its motion to dismiss an undisputedly authentic—but ambiguous—written agreement saying the university would provide "educational services" in

16

exchange for tuition and fees. 63 Kan. App. 2d at 243. We found the district court should have considered this written agreement when it ruled on the university's motion to dismiss. But because factual questions remained as to what the written agreement meant by "educational services," dismissal was improper. 63 Kan. App. 2d at 244.

More recently, we declined to apply this exception in *Employers Mut. Cas. Co. v. Jayhawk Fire Sprinkler Co.*, No. 124,001, 2024 WL 136654 (Kan. App. 2024) (unpublished opinion). In that case, the petition alleged that Jayhawk had negligently installed a fire protection system in 2013 for a company the plaintiff insured, causing that company—and eventually the plaintiff—damages. Jayhawk moved to dismiss the petition under K.S.A. 60-212(b)(6), claiming that the plaintiff's insured had waived the right to collect for damages in a contract. Jayhawk then attached a copy of a 2017 work invoice for the inspection of the insured's system that contained a waiver of liability. Jayhawk asserted that this same waiver language appeared in all invoices for any work Jayhawk performed for the company. The district court concluded it could consider this invoice, along with Jayhawk's allegation that the same language appeared in all other contracts, and dismissed the lawsuit.

This court reversed the district court's dismissal. We noted that the plaintiff asserted that Jayhawk's negligence damaged the plaintiff's insured in 2013—not 2017—and we disagreed with the district court's finding that it could consider the 2017 invoice because it was "'referenced'" in the petition. 2024 WL 136654, at *3. Rather, "the mere reference to a document in a petition does not make the document "'central to the plaintiff's claim'" or proper for submission by a defendant and consideration by the court in a motion to dismiss." 2024 WL 136654, at *3. And Jayhawk's assertion that the waiver appeared on all invoices for any work it performed for the insured was an allegation outside the petition. 2024 WL 136654, at *3. Because this allegation and the 2017 invoice were matters outside the petition, we found the district court erred by dismissing the case under K.S.A. 60-212(b)(6). 2024 WL 136654, at *4.

17

These decisions demonstrate that when a plaintiff asserts a claim based on a written instrument, courts will consider an undisputedly authentic copy of that written instrument attached to a motion to dismiss without converting the motion to a request for summary judgment. But courts will not resolve factual questions surrounding those instruments as part of a K.S.A. 60-212(b) motion. Nor will courts consider documents attached to a motion to dismiss that are not central to the plaintiff's claim or when there is a reasonable question about their applicability or authenticity. To date, we have only used this rule to affirm the district court's dismissal of *Crosby*'s breach-of-contract claim.

The district court's actions here were similar to those requiring reversal in *Employers Mut. Cas. Co.* The court concluded that it could consider the three documents Wells Fargo attached to its motion to dismiss and reply in support of that motion—the 2008 account application, the 2021 account agreement, and Greenelsh's Utah Affidavit—because those documents *helped resolve* the Estate's claim, not because the claim *arose out of* those documents. In other words, the documents provided evidence relevant to the Estate's claim; they were not foundational written instruments giving rise to the Estate's claim.

As in *Employers Mut. Cas. Co.*, the district court found it could consider Greenelsh's affidavit because it was "reference[d]" in the Estate's petition. The court then found that Rogers' bank accounts were opened in Utah in 2008, even though the checking account number on that application differed from the account number listed in the Estate's petition; the court resolved this discrepancy by accepting Wells Fargo's assertion that the account number had changed over time. And the court found it could consider the account agreement attached to Wells Fargo's reply in support of its motion to dismiss because the Estate had time to consider its contents and address it at the oral argument on Wells Fargo's motion.

18

Thus, instead of basing its ruling on the petition and resolving factual disputes in the Estate's favor, the district erred by accepting *Wells Fargo's* factual allegations—which were not included in the petition—as true. The court erred by considering documents that may have been relevant from an evidentiary standpoint but were not *central* to the Estate's claim in the manner discussed in *Crosby*. The court then exacerbated these procedural errors by refusing to allow the Estate more time to evaluate the evidentiary merit of these assertions and treat Wells Fargo's request as a motion for summary judgment. See K.S.A. 2023 Supp. 60-212(d). As in *Employers Mut. Cas. Co.*, these actions require us to reverse the district court's dismissal of the Estate's petition.

3. *The district court erred when it dismissed the Estate's petition for failure to state a claim.*

The Estate also challenges the district court's legal conclusion that the documents attached to Wells Fargo's filings, as well as the bank's factual assertions, demonstrate that the Estate cannot succeed on its claim. In particular, it asserts the district court erred when it found that the Estate's claim against Wells Fargo was governed by Utah law and that Utah law provided a complete defense for the bank's distribution of the funds to Greenelsh.

Because we have concluded that the district court erred in considering these documents, and by refusing to permit the Estate to conduct discovery so it could assess the accuracy of Wells Fargo's assertions, it would be premature to address those documents and assertions without first allowing the Estate the opportunity to provide further context. We pause, however, to comment on the path the district court employed in concluding that Utah law governed—and foreclosed—the Estate's claim and to provide some instruction on the contours of that question for the court to consider on remand.

Courts presume that lawsuits filed in Kansas are governed by Kansas law. See *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 144, 38 P.3d 757 (2002); see also *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 731, 71 P.3d 1097 (2003) (district court's decision to apply Kansas law in the absence of a conflict of laws was sound). The party seeking the application of a different state's law bears the burden of persuading the courts that the other law should apply. *Layne Christensen Co.*, 30 Kan. App. 2d at 143-44.

With few exceptions, Kansas courts follow the principles articulated in the Restatement (First) of Conflict of Laws (1934) to determine which state's substantive law should govern. *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 538, 44 P.3d 364 (2002). But see *In re K.M.H.*, 285 Kan. 53, 60-62, 169 P.3d 1025 (2007) (using a multifactor interest-analysis similar to the Restatement [Second] of Conflict of Laws §§ 6, 287[1] & comment d [1969], for a conflict arising in a parentage case). In general, we defer to the parties' contractual selection as to which law should apply, so long as that selection bears some connection to the transaction and the law chosen does not violate Kansas public policy. *Brenner*, 273 Kan. 525, Syl. ¶ 5. Courts are not compelled to give effect to a choice-of-law clause if the law the parties have chosen "contravenes the settled public policy" of this state. 273 Kan. 525, Syl. ¶ 6.

On remand, the district court should remain mindful that Kansas courts begin with the presumption that Kansas law governs the Estate's claim. Wells Fargo must show that the law of a different state—such as Utah—applies. This requires a showing that there is a meaningful conflict between Kansas and Utah law and that the facts support a conclusion that Utah law should govern (including, but not limited to, a determination that the Estate's claim fell within the scope of any choice-of-law clause). See *AT&SF Ry. Co.*, 275 Kan. at 762 (concluding that no choice-of-law issue arose when Kansas and Illinois law were not in conflict). This burden normally cautions against dismissal under K.S.A. 60-212(b)(6), as it often requires a defendant seeking the application of a different

20

law to assert and sufficiently prove additional facts outside of the petition, as Wells Fargo's motion attempted to do in this case.

If the district court concludes that Utah law applies to the Estate's claim, it must then ascertain how the issues in the case would be resolved under Utah law. In its motion, the bank cited the Utah statute concerning small estate affidavits, Utah Code Ann. § 75-3-1202, and the district court applied this statute in isolation to dismiss the case. A complete choice-of-law analysis is not so reductive.

Rather, if Utah law applies, the district court must determine how a Utah court would treat the Estate's claim. Parties cannot expand a state statute's express geographical reach by merely including a choice-of-law clause in a contract. See, e.g., *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1064-65 (N.D. Cal. 2014) (concluding a choice-of-law clause in a contract does not support the extraterritorial expansion of a state statute when the geographical limitations in the statute exclude one of the parties). Consistent with this principle, several questions must be answered before the Utah limitations on liability can come into play.

The statute cited by Wells Fargo is part of the Utah Probate Code, which only applies to nonresident decedents if they have property located in Utah. See Utah Code Ann. § 75-1-301(2). Thus, Utah Code Ann. § 75-3-1202 would only apply if the funds in the Estate's bank accounts were deemed—under Utah law—to be located within Utah. The district court made no finding to this effect when it dismissed the Estate's claim, nor has either party cited to a Utah statute or judicial decision supporting such a conclusion. The sole Utah decision cited by Wells Fargo on this point held that intangible property can be treated as though it is located in Utah when, regardless of the domicile of the owner, a probate action is properly commenced in that state. See *In re Thourot's Estate*, 52 Utah 106, 172 P. 697, 699 (1918). But the Utah Supreme Court observed in that case that this principle was an exception to the more general rule in that state that "all

intangible property is presumed to have its situs at the domicile of its owner." 172 P. at 699. Rogers was residing in Kansas at the time of his death. His estate was probated in Kansas.

The district court may perhaps conclude, following discovery, that the facts alleged in Wells Fargo's motion are accurate and govern the outcome of this case. The court may eventually conclude that the Estate cannot prevail on its claims. But as our discussion here demonstrates, several factual and legal questions must be resolved before any such conclusion would be appropriate. And most important, these questions cannot be determined at this stage, based on the Estate's petition.

The district court erred when it dismissed the Estate's petition for failure to state a claim on which relief can be granted under K.S.A. 60-212(b)(6). We reverse that judgment and remand the case for further proceedings.

Reversed and remanded with directions.

\* \* \*

ATCHESON, J., concurring: Although I agree that the Butler County District Court precipitately dismissed this action the Estate of Craig W. Rogers brought against Wells Fargo Bank to recover about $38,000 the bank delivered to an apparently roguish interloper, I would jump through one more hoop than the majority does in reversing and remanding. The Bank has asserted—with little in the way of supporting authority—that it is effectively immunized under Utah law for the payout. Neither in the district court nor here has the Bank marshalled a persuasive legal argument for relief, especially given the exceptionally abbreviated factual record. So I would send the case back for further proceedings to more fully develop both the relevant facts and the governing legal principles.

When Rogers, a resident of Andover, died, he had a checking account and a savings account with the Bank. In its two-page petition, Rogers' Estate alleged the Bank wrongfully gave the money in those accounts to Bryan T. Greenelsh in response to "written claims" he presented; the Estate, therefore, sought damages from the Bank equivalent to the account balances, interest, and other relief. Greenelsh appears as a spectral presence in the abbreviated record in this case—having neither an identifiable association with Rogers nor a claim to the money in the accounts beyond the audacious demand for payment itself. Maybe some of that will become clearer (and less remarkable) on remand.

In response to the petition, the Bank filed a motion to dismiss for failure to state a claim under K.S.A. 60-212(b)(6). In briefing the motion to the district court, the Bank submitted three documents:  (1) a form showing Rogers opened the accounts in Utah; (2) a bank agreement saying the law of the state in which an account was opened governs any legal disputes; and (3) an affidavit from Greenelsh representing that he is a successor to or acting on behalf of Rogers and requesting that the Bank pay him the account balances in accordance with Utah Code Ann. § 75-3-1201, governing the collection of certain personal property upon the owner's death. Relying on a companion Utah statute, the Bank argued it had been "discharged and released" from any liability to Rogers' Estate by paying in accordance with the affidavit, so the Estate's remedy lay in an action against Greenelsh. Utah Code Ann. § 75-3-1202. The district court agreed and dismissed the Estate's action against the Bank.

The Estate has appealed, and in response, the Bank makes essentially the same argument to us.

The majority ably describes both the especially stringent standard for granting a motion to dismiss and the Kansas appellate courts' continued adherence to traditional notice pleading despite the federal courts' ongoing drift toward requiring more detailed

23

factual allegations in an opening pleading. Concomitantly, as the majority explains, a district court considering a motion to dismiss under K.S.A. 60-212(b)(6) typically should look only at the well-pleaded allegations of the petition. And as a general rule, the district court converts a motion to dismiss to one for summary judgment if it considers documents or other evidence outside the petition. The district court must then give the parties an opportunity to submit additional evidentiary materials and legal arguments before ruling. K.S.A. 2023 Supp. 60-212(d).

But there is an exception to those principles. The district court may consider a document that has not been submitted with the petition if it is integral to the plaintiff's core claims and its authenticity is otherwise undisputed. *Minjarez-Almeida v. Kansas Bd. of Regents*, 63 Kan. App. 2d 225, 242, 527 P.3d 931 (2023); *Employers Mut. Cas. Co. v. Jayhawk Fire Sprinkler Co.*, No. 124,001, 2024 WL 136654, at *3 (Kan. App. 2024) (unpublished opinion). For example, if the plaintiff alleges a breach of contract, they must either set forth with particularity the relevant terms of the contract in the petition or append a copy of the written agreement. See K.S.A. 2023 Supp. 60-209(h). If the plaintiff fails to do so, the defendant may submit the contract with a motion to dismiss. The contours of the exception aren't especially well defined, and how the exception applies to documents less central than a contract in a breach-of-contract action often devolves into a case specific determination unsuited to some overarching rule.

For purposes of this appeal, the document showing Rogers opened the accounts in Utah and the bank agreement setting out the terms and conditions that apply to checking and savings accounts are integral to the contractual relationship between the two. The banking relationship defines the foundation for the Estate's claim. Assuming authenticity, the district court, then, properly considered those documents in ruling on the motion to dismiss without converting it to one for summary judgment.

24

The Greenelsh affidavit is a closer question. But the petition specifically identifies "written claims" from Greenelsh as the device prompting the Bank's allegedly wrongful disbursement of the account balances. The specificity of the allegation makes the affidavit, as the instrument containing the claims, central to the Estate's action. And, in turn, the district court properly could review the affidavit in deciding the motion to dismiss. So I part ways with the majority on that narrow point.

Consistent with notice pleading, the Estate could have alleged simply that the Bank wrongfully disbursed the money to a third party. If the petition had stated no more, I would be inclined to agree the affidavit would not be so obviously integral to the core allegations of the petition that the Bank could have submitted it in support of a motion to dismiss. In that circumstance, the Bank arguably could have sought a more definite statement under K.S.A. 60-212(e) or, more likely, could have filed an answer and promptly sought summary judgment with minimal discovery. By pleading more than what was strictly necessary, the Estate opened a procedural door for the Bank. See *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) (Under traditional notice pleading, "if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court.").

But the Bank stepped through the door to offer a legal argument in the district court and again on appeal built on presumptuousness rather than proof. And that isn't good enough to prevail on a motion to dismiss. Rogers appears to have opened the accounts in Utah. The savings account, which had just over $34,000 in it, continued unchanged through the payout to Greenelsh. But the checking account had a different identification number than the checking account Rogers first opened. I put this unexplained discrepancy in account numbers aside for now; it would simply be another consideration favoring reversing and remanding. Under the terms and conditions for the accounts, the law of the state where an account was opened governs. The Bank says Utah

law applies, and that appears to be correct for the savings account and maybe for the checking account.

But the Bank's argument falters on its premise that Utah Code Ann. § 75-3-1201 authorized the disbursement of the money in the accounts to Greenelsh when he presented the affidavit for collection of estate assets. The statute covers "tangible personal property or an instrument evidencing a debt, obligation, stock, or chose in action belonging to the decedent" in an estate with a value "not exceed[ing] $100,000." Utah Code Ann. § 75-3-1201(1). And, as we have outlined, a party relinquishing possession of covered personal property to someone presenting an affidavit conforming to Utah Code Ann. § 75-3-1201 is relieved of any further obligation to a personal representative of the decedent, such as the administrator of the estate. Utah Code Ann. § 75-3-1202. The Bank has asserted the shield in Utah Code Ann. § 75-3-1202 as a legal bar to the Estate's action.

But traditional bank accounts may be considered intangible rather than tangible personal property, and they do not obviously seem to be instruments otherwise identified in Utah Code Ann. § 75-3-1201(1). See *Nemariam v. Federal Democratic Republic of Ethiopia*, 400 F. Supp. 2d 76, 83-84 (D.D.C. 2005) (collecting cases finding bank accounts to be intangible property); Simowitz & Silberman, *Nonparty Jurisdiction*, 55 Vand. J. Transnat'l L. 433, 451 n.83 (2022) ("Bank accounts are classic intangible assets."); 84 C.J.S., Taxation § 422 (characterizing bank accounts as "property of an intangible nature"); 30 Am. Jur. 2d, Executions § 471 (characterizing bank accounts as intangible personal property of debtor for collection purposes); 76 Am. Jur. 2d, Trusts § 176 (bank accounts considered intangible personal property subject to constructive trusts). The Bank has presented no persuasive argument to the contrary based on Utah authority or more general legal principles.

26

Rather, the Bank has pointed us to *In re Thourot's Estate*, 52 Utah 106, 172 P. 697 (1918), a case that largely undermines its position. The narrow question in that case turned on whether an account in a Salt Lake City bank was subject to personal property tax there, although the deceased depositor lived in Nevada. The court seemed to recognize the bank account to be intangible personal property that typically would be treated as "hav[ing] its situs at the domicile of the owner." 172 P. at 699.

That rule cuts against the Bank here. In *Thourot's Estate*, the court held that because an estate had been opened for the deceased depositor in Utah with a Utah resident serving as executor, the account then became taxable Utah property. The holding on those particular facts in no way suggests Rogers' accounts should be considered tangible personal property or should otherwise come within the scope of Utah Code Ann. § 75-3-1201. And, in turn, *Thourot's Estate* doesn't support the Bank's argument for protection under Utah Code Ann. § 75-3-1202.

In sum, the Bank has failed to offer a sufficient legal basis for granting its motion to dismiss the Estate's action. The district court erred in doing so. I would reverse and remand for further proceedings with the understanding that on a more fully developed factual record and a retooled legal argument from the Bank, the district court would be free to reconsider whether those Utah statutes apply.